IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

Magnetar Technologies Corp., and :
G&T Conveyor Co., :
 :
       Plaintiffs, :
 :
v. : Civ. No. 07-127-LPS-MPT
 :
Six Flags Theme Parks Inc., et al., :
 :
       Defendants. :
 :

Steven J. Balick, Esquire, John G. Day, Esquire, and Tiffany Geyer Lydon, Esquire, of ASHBY & GEDDES, Wilmington, Delaware.

Of Counsel: Raymond P. Niro, Esquire, Joseph N. Hosteny, Esquire and Patrick F. Solon, Esquire, of NIRO, SCAVONE, HALLER & NIRO, Chicago, Illinois.

Attorneys for Plaintiffs.


Sean T. O'Kelly, Esquire, of O'KELLY, ERNST, BIELLI & WALLEN, LLC, Wilmington, Delaware.

Of Counsel: Matthew B. Lowrie, Esquire and Aaron W. Moore, Esquire, of FOLEY & LARDNER LLP, Boston, Massachusetts.

Attorneys for Defendants.

## **MEMORANDUM OPINION**

February 1, 2012
Wilmington, Delaware

**STARK, U.S. District Judge:**

This is a patent infringement case initiated on March 1, 2007 by plaintiffs Safety Braking Corp. ("Safety Braking"),[1] Magnetar Technologies Corp. ("Magnetar"), and G&T Conveyor Co. ("G&T"). Plaintiffs assert that defendant amusement park operators[2] infringe two patents relating to magnetic braking systems: U.S. Patent Nos. 5,277,125 ("the '125 patent") and 6,659,237 ("the '237 patent").[3] The Court conducted *Markman* hearings on the disputed claim terms on October 15, 2009, before now retired Judge Joseph J. Farnan, Jr. (*see* Transcript of October 15, 2009 *Markman* hearing (D.I. 168) (hereinafter "*Markman I* Tr.")), and again on April 14, 2011, after the case was reassigned (*see* Transcript of April 14, 2011 *Markman* hearing (D.I. 226) (hereinafter "*Markman II* Tr.")). This Memorandum Opinion provides construction of the disputed terms.

## BACKGROUND

Plaintiff G&T, whose primary business is baggage-handling equipment for airports, is the assignee of the '125 patent, entitled "Material Handling Car and Track Assembly Having Opposed Magnet Linear Motor Drive and Opposed Permanent Magnet Brake Assembly." (*See* D.I. 1 ¶¶ 5, 19; D.I. 157 at 1; D.I. 199 at 1; *see also* '125 patent) Plaintiff Magnetar, whose

---

[1]On July 1, 2008, Safety Braking Corporation ended its participation in the present action. (D.I. 86) Therefore, only plaintiffs Magnetar and G&T shall be collectively referred to as "Plaintiffs" hereinafter.

[2]A number of original defendants have either been dismissed from this action (*see* D.I. 24; D.I. 74) or have filed a Notice of Bankruptcy and Suggestion of Automatic Stay (*see* D.I. 149; D.I. 158 at 1 n.1). The remaining defendants are identified *infra*.

[3]The '125 and '237 patents may be found at Exhibits B and C, respectively, attached to D.I. 157.

1

business includes design and sale of magnetic brake systems for vehicles – principally amusement rides and roller coasters – received a field-limited exclusive license to the '125 patent from G&T. (*See* D.I. 1 ¶¶ 4, 19; D.I. 157 at 1; D.I. 199 at 1) Magnetar is also the assignee of the '237 patent, entitled "Eddy Current Brake." (D.I. 1 ¶ 22; D.I. 199 at 1; *see also* '237 patent) The two patents-in-suit relate to magnetic braking systems for rail cars, in particular, rail cars used on roller coasters. (*See* D.I. 157 at 1; D.I. 205 at 1) Two terms from each of the patents-in-suit are in dispute.

Defendants Cedar Fair L.P., Paramount Parks, Inc., Knott's Berry Farm, Kings Island Company, Cedar Fair, and Busch Entertainment Corp. (collectively "Defendants") are operators of amusement parks in various locations. (*See* D.I. 1 ¶¶ 10-12; D.I. 157 at 2; D.I. 158 at 1, 4; D.I. 199 at 2) The accused products are amusement rides, such as roller coasters, that use magnetic or "eddy current" brakes. (*See* D.I. 199 at 1)

## LEGAL STANDARDS

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted). Construing the claims of a patent presents a question of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 388-90 (1996). "[T]here is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324. Instead, the court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning . . .

2

[which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). The patent specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . [b]ecause claim terms are normally used consistently throughout the patent . . . ." *Id.* (internal citation omitted).

It is likewise true that "[d]ifferences among claims can also be a useful guide . . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. It bears emphasis that "[e]ven

3

when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (internal quotation marks omitted), *aff'd*, 481 F.3d 1371 (Fed. Cir. 2007).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman*, 52 F.3d at 980. The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

A court also may rely on "extrinsic evidence," which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of ordinary skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* Nonetheless, courts must not lose

4

sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19.

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007). Thus, if possible, claims should be construed to uphold validity. *See In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984).

## CONSTRUCTION OF THE DISPUTED TERMS[4]

---

[4] Defendants failed to serve their proposed constructions of three terms on July 17, 2009, as was required by the Scheduling Order. (*See* D.I. 145 ¶ 5; D.I. 157 at 1 & Ex. A) Then, on August 14, 2009, Defendants filed their Opening Claim Construction Brief (D.I. 158), adding a fourth disputed term. (D.I. 157 at 14-16) The Court has discretion to sanction Defendants for failing to comply with the Scheduling Order. *See O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006) ("The court may impose any just sanction for the failure to obey a scheduling order, including refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence.") (internal quotation marks omitted). Here, the Court has decided not to strike Defendants' claim construction brief or proposed constructions, primarily because, due to the lengthy passage of time since Defendants' violation, Plaintiffs are not prejudiced. (*See Markman II* Tr. at 27) Although Plaintiffs did not receive Defendants' proposed constructions in a timely fashion, Plaintiffs have now had three opportunities to respond to Defendants' contentions – in Plaintiffs' Response Brief on Claim Construction (D.I. 165) and at the *Markman I* and *II* hearings (D.I. 168; D.I. 226).

5

## I. '125 Patent

### A. Material Handling/Material Handling Car

The disputed terms "material handling" (as presented by Plaintiffs) or "material handling car" (as presented by Defendants) appear in the preamble of asserted claim 3 of the '125 patent[5] (as well as in the preambles of non-asserted claims 1 and 2). The parties dispute whether this term is a claim limitation.

Plaintiffs contend that "[t]he phrase [material handling], which appears only in the preamble, is not a limitation of any claim." (D.I. 157 at 2) They argue the term is a purely introductory phrase serving as a statement of a purpose or intended use of the invention that is fully described in the body of the claim. (*See id.* at 7) In contrast, Defendants contend that the phrase "material handling car" is "a structural limitation which the patentee incorporated from the preamble into the claim limitations." (D.I. 158 at 2) They argue the term is limiting because it is pervasive throughout the patent, is incorporated by reference into the language of the claim through the use of the term "said" in the claim, and is an essential structure of the invention. (*See id.* at 7-10; *see also* D.I. 166 at 2-10)

The Federal Circuit has stated:

> If the claim preamble, when read in the context of the entire claim, recites limitations of the claim, or, if the claim preamble is necessary to give life, meaning, and vitality to the claim, then the claim preamble should be construed as if in the balance of the claim. Indeed, when discussing the claim in such a circumstance, there is no meaningful distinction to be drawn between the claim preamble and the rest of the claim, for only together do they comprise the claim. If, however, the body of the claim fully and intrinsically sets forth the complete invention, including all of its

---

[5]The preamble of Claim 3 provides: "Material handling car and track assembly, said assembly comprising[]." ('125 patent, col. 7 lines 3-4)

6

limitations, and the preamble offers no distinct definition of any of the claimed
invention's limitations, but rather merely states, for example, the purpose or intended
use of the invention, then the preamble is of no significance to claim construction
because it cannot be said to constitute or explain a claim limitation.

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) (internal quotation marks and citations omitted). Hence, the Court must determine whether the preamble here is "necessary to give life, meaning, and vitality to the claim." *See id.*; *see also Honeywell Int'l, Inc. v. Nikon Corp.*, 589 F. Supp. 2d 433, 439 (D. Del. 2008). "[W]hether to treat a preamble as a claim limitation is determined on the facts of each case in light of the claim as a whole and the invention described in the patent." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006).

While "no litmus test defines when a preamble limits claim scope," the Federal Circuit has provided several "guideposts." *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). For example, a preamble may be limiting where: (1) there is "dependence on a particular disputed preamble phrase for antecedent basis," (2) the "preamble is essential to understand limitations or terms in the claim body," (3) the preamble recites "additional structure or steps underscored as important by the specification," or (4) there was "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art." *Id.*; *see also Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1288-89 (Fed. Cir. 2008) ("[T]he purpose of a claim preamble is to give context for what is being described in the body of the claim; if it is reasonably susceptible to being construed to be merely duplicative of the limitations in the body of the claim (and was not clearly added to overcome a rejection), we do not construe it to be a separate limitation.").

7

Having considered the *Catalina* guideposts, the Court concludes that the phrase "material handling" (or "material handling car") is not a claim limitation in the '125 patent.[6] First, the preamble of claim 3 of the '125 patent does not provide an antecedent basis to an element of the claim. The body of claim 3 includes, for example, "a car," "a track," "said car," and "said track." (*See* '125 patent, col. 7 lines 5-12; *id.* col. 8 lines 1-11) Every use of "said" in the claim is preceded by an express antecedent basis in the body of the claim.[7] Nor is the preamble to claim 3 "essential to understand limitations or terms in the claim body." *Catalina*, 289 F.3d at 808.

The third *Catalina* guidepost, whether a preamble provides "additional structure or steps underscored as important by the specification," is also not present. *Id.* While the term "material handling" is used throughout the '125 patent, claim 3 includes the important structures of a car and track. (*See* '125 patent, col. 7 lines 5-6; *see also* D.I. 165 at 4) Because the claim body provides a complete structure, the preamble is not needed to add to that structure. (*See generally* D.I. 165 at 4; *Markman II* Tr. at 5-6 (arguing '125 patent does not require claimed structures only be used for handling material)) Although the term "material handling" is used in the specification, the structure invented is a track-based system for moving and braking a car. (*See* '125 patent, col. 1 lines 9-13 ("The present fnvention [sic] relates to a material handling car and track assembly and is ***directed more particularly to acceleration and deceleration means*** mounted in the track assembly and adapted to influence speed of the car.") (emphasis added)

---

[6]The Court finds no significance to whether the disputed term is viewed as "material handling" or "material handling car."

[7]As Defendants emphasize, the conclusion might be different if the Court were being asked to determine if the different preamble in non-asserted claims 2 and 3 were being construed, but they are not.

8

A preamble may also be limiting if there is "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art." *Catalina*, 289 F.3d at 808. Here, the prosecution history shows no such reliance on the preamble. (*See* D.I. 157 at 9; *id.* at Exs. D & E)

Thus, the Court concludes that the phrase "material handling" (or "material handling car") is not a limitation of asserted claim 3 of the '125 patent.

### B. Fin Extending From an Underside of Said Car (and Lengthwise of Said Car)

The parties have several disputes relating to the construction of this term. Plaintiffs contend the term "fin" needs no further construction and "[t]he term 'an underside' refers to an area under the chassis of a car (e.g., the part of the car to which the wheels are mounted). A fin need not extend from the bottommost part of the vehicle or the part that is lowest relative to the ground." (D.I. 157 at 2, 10; *see also* D.I. 165 at 5-7) Defendants, by contrast, contend that "fin extending from an underside of said car and lengthwise of said car" should be construed to mean that "the fin extends downward in a vertical orientation from the bottom of the material handling car and runs in the direction of the length of the car." (D.I. 158 at 10-11; D.I. 166 at 10-11) Plaintiffs respond that Defendants seek improperly to introduce "downward," "vertical," "bottom," and "material handling" into the claim. (*See* D.I. 165 at 6-7; *Markman II* Tr. at 11-13) Plaintiffs add that if the Court decides "lengthwise" needs construction, then "a fin extending . . . lengthwise of said car" should mean "a fin extending . . . in the direction of the length of said car." (D.I. 165 at 7)

Because the Court has already decided that "material handling" is not a claim limitation, the portion of Defendants' construction using the words "material handling" will not be adopted.

9

Additionally, the word "fin" does not need to be construed, as the parties agree that its ordinary meaning applies. Two issues remain to be resolved: defining "underside" and determining the directional requirements of the fin.

The language in claim 3 and throughout the '125 patent states that the fin extends from "an underside." (*See* '125 patent, col. 7 line 9) The indefinite article "an" suggests that multiple surfaces may be involved in the underside of the car, and the fin may be attached to one of those multiple surfaces. While the word "underside" refers to the bottom or bottom surface, there is no indication that the surface in the claim must be the bottom-most or lowest surface. The patent's Figure 1, which shows a fin attached to an undersurface of the car, but not attached to the bottom-most surface of the underside of the car, is consistent with this conclusion.

The Court further concludes that it would be improper to define the direction in which the fin must be oriented as downward or vertical, as doing so would unjustifiably import limitations into the claim. *See generally Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004) ("While claims must be construed in light of the specification, limitations from the specification are not to be read into the claims, for it is the *claims* that measure the invention.") (internal quotation marks and citations omitted). The Court agrees with Plaintiffs that the issue is not how the invention is oriented in relation to the ground. (*See Markman II* Tr. at 56)

The Court also adopts Plaintiffs' alternative construction of "lengthwise" as "in the direction of the length of said car." While the term "lengthwise" is not defined in the specification, each use of this term throughout the patent makes reference to the direction of the length of the car; a construction which "substitute[s] in the direction of the length for lengthwise" neither alters nor restricts the claim. (D.I. 158 at 10-11; D.I. 165 at 7; *Markman II* Tr. at 15)

10

Therefore, the term "fin extending from an underside of said car and lengthwise of said car" shall be construed as a "fin extending from an area under the chassis of a car (e.g., the part of the car to which the wheels are mounted) in the direction of the length of said car."

## II. '237 Patent

### A. Change the Spaced Apart Relationship

The disputed term appears in claims 1[8] and 10.[9] Plaintiffs contend that "[t]he term

---

[8] Claim 1, with emphasis added, states:

> 1. An eddy current brake comprising:
>
> a diamagnetic or non-magnetic member;
>
> a first support wall;
>
> a separate second support wall disposed in a spaced apart relationship with said first support wall for enabling the member to pass therebetween;
>
> a first linear array of permanent magnets disposed on the first wall on a side of the first wall facing the second wall;
>
> a second linear array of permanent magnets disposed on the second wall on a side of the second wall facing the first wall, the first and second arrays being parallel with one another; and
>
> apparatus for adjusting eddy current induced in the member, and braking force, as a function of velocity of the member between the arrays, said apparatus including linkages for enabling movement of the member therepast to *change the spaced apart relationship* between the first and second walls.

[9] Claim 10, with emphasis added, states:

> 10. An eddy current brake comprising:

'spaced apart relationship' means the positions of the first and second magnet arrays (claim 10) or support walls (claim 1) relative to one another in physical space. To 'change the spaced apart relationship' means to change the position of either one relative to the other, or both relative to each other, in any direction, in physical space." (D.I. 157 at 2) According to Plaintiffs, the claim language requires only that one or both of the magnet arrays be moved in any direction relative to each other; Plaintiffs read "changing" in the "broadest ordinary sense." (*Id.* at 13)

Defendants, on the other hand, propose that the term "change the spaced apart relationship between the first and second arrays" be construed to mean "the distance between the planes of the two walls containing the magnetic arrays is changed; that is, the width of the air gap between the two magnetic arrays through which the fin passes either increases or decreases." (D.I. 158 at 3) Defendants argue that the term must be given a narrow construction because, during prosecution, the patentee disclaimed any movement other than movement between the magnetic arrays that changes the perpendicular distance between the arrays. (*See id.* at 12; D.I.

---

> a diamagnetic or non-magnetic member;
>
> a first linear array of permanent magnets;
>
> a second linear array of permanent magnets disposed in a spaced apart relationship with said first linear array for enabling the member to pass there between, the first and second arrays being parallel with one another; and
>
> apparatus for adjusting eddy current induced in the member, and braking force, as a function of velocity of the member between the arrays, said apparatus including linkages for enabling movement of the member therepast to ***change the spaced apart relationship*** between the first and second arrays.

12

166 at 11-18) Plaintiffs respond that Defendants' proposal is too limiting and excludes a preferred embodiment. (*See* D.I. 165 at 9-11)

As referenced in the Abstract, "[a]n eddy current brake includes a diamagnetic member, a first support wall and a second support wall with the first and second linear arrays of permanent magnets disposed on the walls facing one another. Apparatus is provided for ***moving at least one*** of the walls in order to control eddy current induced in the member in the passage of the member therepast to adjust the braking force between the magnets and the member." ('237 patent, Abstract) (emphasis added) "Moving at least one" indicates a move of one or both of the arrays of magnets. Moreover, the parties agree that the eddy current or magnetic force between two magnets changes when just one magnet is moved without changing its vertical plane – that is, even if one magnet is moved without changing the horizontal distance between the walls or arrays. (*See Markman II* Tr. at 45-47, 56; *see also id.* at 20-21 ("[T]he specification . . . says that you can raise the wall 104, which is one of the magnets, in order to change a transverse relationship between the wall and array . . . and the member, which is the fin. The transverse movement raises the wall, which is 104, increasing relative penetration of 102, which increases the induced eddy currents and braking action. . . . So when you move one of the walls up, you increase the braking force, you adjust the eddy current and you change the spaced apart relationship that way. . . ."); '237 patent, col. 5 lines 45-49 ("which raises the wall 104 from stops 270, 272 in order to change a transverse relationship between the wall 4 and array 120 and the member 104. This transverse movement raises 104 increasing relative penetration of 102, which increases the induced eddy currents")) The Court sees no reason to limit the claim to only the type of movement that Defendants propose.

13

Furthermore, the Court finds no prosecution history disclaimer. Such a "disclaimer must be clear and unmistakable, and unclear prosecution history cannot be used to limit claims." *Cordis Corp. v. Boston Science Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009) (internal quotation marks omitted). Both parties address a PTO Office Action of October 3, 2002, which rejected claims from the initial application that led to the '125 patent. (*See* D.I. 157 Ex. H; D.I. 158 Ex. 4) The PTO rejected application claims 2 and 3. (*See* D.I. 157 Ex. H at 3; D.I. 158 Ex. 4 at 3) Application claim 2 referenced perpendicular movement by the magnetic arrays while application claim 3 referenced parallel movement. (*See* D.I. 157 Ex. G at claims 2-3) Those rejected claims depicted "the walls moving both parallel and perpendicular to the member." (D.I. 157 Ex. H at 3; D.I. 158 Ex. 4 at 3) As Plaintiffs explained, when claims 2 and 3 were rejected, it was because they did not exclude the possibility of both walls moving together in an identical manner, which would not have changed the spaced apart relationship between the two walls. (*See Markman II* Tr. at 22-23 ("[T]he reason that claim 2 and also claim 3 . . . were rejected is because they covered too much. . . . You didn't have to change the spaced apart relationship to follow that claim. But claim 7 that was in the same set, this gets allowed right away and gets combined with what was claim 5 to become claim 1 in the patent. If you move at least one of the walls and you change the spaced apart relationship, the patent examiner right away said, yes, that's fine. As long as you change the spaced apart relationship, we don't care which way you go. You can go parallel, you can go perpendicular, it doesn't matter, but you have to change the relative position. That's why the patent was allowed."))

Defendants argue that because Plaintiffs dropped the language in application claim 3, they thereby disclaimed parallel movement. (*See* D.I. 158 at 12) The Court disagrees, finding no

14

clear disavowal. (*See* D.I. 165 at 8-10; D.I. 157 Exs. G, H)

For these reasons, the Court will construe the term "change the spaced apart relationship" to mean "change the relationship of one thing (i.e., a wall or magnet array) relative to the other (i.e., the other wall or magnet array), or both relative to each other, in any direction, in physical space."

## B. As a Function of Velocity of the Member Between the Arrays

Plaintiffs argue that the term "as a function of velocity of the member between the arrays" needs no construction but, if construction is deemed necessary, the term should be construed only to clarify what is meant by the "function" requirement. (*See* D.I. 165 at 16) Specifically, "[a]s a function of velocity" should mean that "the 'apparatus' in claims 1 and 10 is capable of adjusting eddy current and braking force in a way that depends on velocity of the 'member' between the first and second 'arrays' of magnets." (*Id.*) Defendants, instead, propose that the phrase "as a function of velocity of the member between the arrays" means that "the apparatus is self-regulated to change the distance between the two magnetic arrays based upon the velocity of the fin as it passes between the magnetic arrays." (D.I. 158 at 3)

The Court concludes there is a material dispute between the parties requiring resolution through construction. *See O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."). While district courts are not required to engage in an exercise of redundancy, nor to construe every single limitation in a claim, when the parties do present a fundamental dispute regarding

15

the scope of a claim term, "it is the court's duty to resolve it." *Id.*

The Court will adopt Plaintiffs' proposed construction, which provides some clarity and is supported by the claim language and specification. By contrast, Defendants' construction improperly imports limitations from the specification into the claim language. *See Golight*, 355 F.3d at 1331. In particular, Defendants import the concept of "self-regulated" (or "self-regulating") from a preferred embodiment. (*See* '237 patent, col. 5 lines 56, 66; *Markman II* Tr. at 25-26) But this is just a description of one specific embodiment of the patent, and the specification contains other examples. (*See* D.I. 165 at 14; '237 patent, col. 6 lines 41-46; *Markman I* Tr. at 15-17; *Markman II* Tr. at 26-27)

In addition, Defendants attempt to substitute "fin" for "member," when, as Plaintiffs point out, "the member can but does not have to be a fin," as "a 'fin' is only an example of a member, as provided in the preferred embodiment descriptions." (D.I. 165 at 15; '237 patent, col. 3; *Markman I* Tr. at 16-17; *Markman II* Tr. at 26) Defendants' construction also improperly limits the means by which the magnetic arrays can change their spaced-apart relationship, attempting to limit the movement to perpendicular motion, an issue the Court has already addressed.

Thus, the Court construes "as a function of velocity of the member between the arrays" to mean that "the 'apparatus' in claims 1 and 10 is capable of adjusting eddy current and braking force in a way that depends on velocity of the 'member' between the first and second 'arrays' of magnets."

## **CONCLUSION**

An Order, consistent with this Memorandum Opinion resolving the parties' claim construction disputes, will be entered.