IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MAGNETAR TECHNOLOGIES CORP.      :
and G&T CONVEYOR CO.             :
                                 :
              Plaintiffs,        :
                                 :
      v.                         :   C. A. No. 07-127-LPS-MPT
                                 :
SIX FLAGS THEME PARKS INC., et al.,  :
                                 :
              Defendants.        :

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

In this patent infringement case, plaintiffs Magnetar Technologies Corp.

("Magnetar")[1] and G&T Conveyor Co. ("G&T")[2] (collectively, "plaintiffs") sued the

defendant theme park operators[3] on March 1, 2007, alleging infringement of U.S.

Patent Nos. 5,277,125 ("the '125 patent") and 6,659,237 ("the '237 patent").[4]  Plaintiffs

assert defendants use infringing magnetic braking systems or assemblies in numerous

amusement park rides.  Plaintiffs contend defendants infringe claim 3 of the '125 patent

and/or claims 1 and 10 of the '237 patent.

Presently before the court is the defendants' motion to exclude the testimony of

---

[1] Magnetar is the assignee of the '237 patent and holds an exclusive field-limited license for the '125 patent.  Magnetar's business includes the design and sale of magnetic brake systems for amusement rides and roller coasters.

[2] G&T is the assignee of the '125 patent.  G&T's business primarily involves baggage-handling equipment for airports.

[3] Astroworld, L.P., Busch Entertainment Corp., Cedar Fair, Cedar Fair LP, Darien Lake Theme Park and Camping Resort, Inc., Elitch Gardens, L.P., Great America LLC, KKI, LLC, Kings Island Riverside Park Enterprises, Inc., Six Flags Over Georgia II, L.P., Six Flags St. Louis, LLC, Six Flags Theme Parks Inc., and Texas Flags, LTD, Teirco Maryland Inc. (collectively "defendants").  Defendants are owners or operators of amusement parks in various locations.

[4] D.I. 1.

plaintiffs' lay opinion witness Edward M. Pribonic ("Pribonic").[5]

## II.   PRIBONIC FACTUAL BACKGROUND

Pribonic is the founder and President of Magnetar.[6]  Pribonic is also the named

inventor on the '237 patent,[7] as well as several other patents relating to magnetic

brakes.[8]  He has a bachelor's degree in mechanical engineering,[9] and a professional

engineering license.[10]

Pribonic has worked as an engineer for the past forty-three years.[11]  After

receiving his bachelor's degree, he worked approximately eighteen years as an

engineer or engineering manager for oil, construction, and steel companies.[12]  For the

past twenty-five years, he has worked within the field of amusement rides and

devices.[13]

From 1987-1991, Pribonic served as the manager of engineering and

architecture for Disneyland.[14]  In this capacity, he was responsible for overseeing sixty

professionals and providing design work for safety improvements, maintenance, and

expansion of all rides within the park.[15]  From 1991-1992, he served as senior facility

design manager for Walt Disney Imagineering, and was responsible for the complete

---

[5] D.I. 341.  Briefing on this motion is as follows:  D.I. 342 (defendants' opening brief), D.I. 366 (plaintiffs' answering brief), and D.I. 385 (defendants' reply brief).
[6] D.I. 366, Ex. 1 at ¶ 1.
[7] *Id.*, Ex. 1 at ¶ 4.
[8] *Id.*, Ex. 1 at ¶ 4.
[9] *Id.*, Ex. 1 at ¶ 2.
[10] *Id.*, Ex. 1 at ¶ 3.
[11] *Id.*, Ex. 1 at ¶ 5.
[12] D.I. 342, Ex. K at 317-19.
[13] D.I. 366, Ex. 1 at ¶ 6.
[14] *Id.*, Ex. 1 at ¶ 7.
[15] *Id.*, Ex. 1 at ¶ 7.

design of Disney theme park facilities from concept through construction.[16]  He also performed feasibility studies to determine the likelihood of success of new facilities and rides, including roller coasters.[17]

After his employment with Disney, Pribonic started a consulting business, which provides services related to amusement rides and devices.[18]  These services include engineering design, project management, design reviews, feasibility studies, facility evaluations, ride safety inspections, and the development of ride maintenance programs.[19]  In 2000, he founded Magnetar, which focuses on design, fabrication, sale, and installation of magnetic brakes.[20]  Magnetar has also developed materials for friction brakes.[21]

In 2006, Pribonic believed Magnetar's magnetic braking system infringed claim 3 of the '125 patent.[22]  Therefore, he sought a license to claim 3 of the '125 patent to prevent the risk of litigation or an injunction.[23]  However, his testimony and expertise do not include whether Magnetar's brakes actually infringed the '125 patent at any time.[24]

Defendants deposed Pribonic on August 2 and 3, 2011, as the 30(b)(6) designee for Magnetar.[25]  On June 1, 2012, plaintiffs served their Rule 26(a)(2)(C) disclosures of testimony, which contained a summary of Pribonic's proposed testimony.[26]  On

---

[16] *Id.*, Ex. 1 at ¶ 8.
[17] *Id.*, Ex. 1 at ¶ 9.
[18] *Id.*, Ex. 1 at ¶ 10.
[19] *Id.*, Ex. 1 at ¶ 10.
[20] *Id.*, Ex. 1 at ¶ 11.
[21] *Id.*, Ex. 1 at ¶ 11.
[22] *Id.* at 8-9.
[23] *Id.* at 9.
[24] *See id.* at 8-9.
[25] D.I. 342, Ex. K.
[26] *Id.*, Ex. NN.

3

September 25, 2012, plaintiffs served a supplemental Rule 26(a)(2)(C) disclosure regarding Pribonic's testimony, which listed fourteen possible subject areas of his proposed testimony.[27]

## III.   STANDARD FOR RELEVANCE:   *GEORGIA-PACIFIC* FACTORS

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."[28]  The *Georgia-Pacific* factors are widely accepted to calculate a reasonable royalty rate[29] and have been affirmed by the Federal Circuit.[30]  A reasonable royalty is an amount which a person would be willing to pay to use a particular patent in the market to make a profit.[31]  "In the absence of an established royalty, reasonable royalty is calculated based upon hypothetical negotiations between a willing licensor and a willing licensee on the date infringement began."[32]

As characterized by the Federal Circuit, the hypothetical negotiations model produces the result "more of the character of a forced settlement where neither party gets all it would wish."[33]  In analyzing the hypothetical negotiation, the court applies the factors of *Georgia-Pacific*, which provides a "list of evidentiary facts relevant, in general,

---

[27] *Id.*, Ex. OO.
[28] 35 U.S.C. § 284 (2012).
[29] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009); *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 n.13 (Fed. Cir.1995) (en banc); *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed.Cir.1986); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, C.A. No. 09-80-LPS-MPT, 2013 WL 2178047, at *23 (D. Del. May 20, 2013).
[30] *See, e.g., i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010).
[31] *LG Display Co. v. AU Optronics Corp.*, 722 F. Supp. 2d 466, 471 (D. Del. 2010).
[32] *Id.*
[33] *Rite-Hite Corp.*, 56 F.3d at 1556.

4

to the determination of the amount of a reasonable royalty for a patent license . . . ."[34]
"[T]here is no formula by which these factors can be rated precisely in the order of their
relative importance or by which their economic significance can be automatically
transduced into their pecuniary equivalent."[35]  Thus, in the court's analysis of the
hypothetical negotiation under the *Georgia-Pacific* factors, some "factors may be of
minimal or no relevance to a particular case and other factors may have to be molded
by the Court to fit the facts of the case at hand."[36]

## IV.    RELEVANCE ANALYSIS:  PRIBONIC'S TESTIMONY

Defendants dispute four categories of Pribonic's proffered testimony:  (1)
relationship of Magnetar's brakes to claim 3 of the '125 patent; (2) advantages of
magnetic brakes over other types of brakes, including friction brakes; (3) importance of
roller coasters to amusement park rides; and, (4) importance of magnetic brakes in the
construction of roller coasters.[37]  The following analysis examines whether the four
categories are relevant to a hypothetical negotiation under the *Georgia-Pacific* factors.

### A.    Relationship of Magnetar's brakes to claim 3 of the '125 patent

#### 1.    Factor One

The first *Georgia-Pacific* factor is "[t]he royalties received by the patentee for the
licensing of the patent in suit, proving or tending to prove an established royalty."[38]
"Courts and commentators alike have recognized that the royalties received by the

---

[34] *Ga.-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (outlining the factors relevant to the determination of a reasonable royalty).
[35] *Ga.-Pac. Corp.*, 318 F. Supp. at 1120-21.
[36] *Proctor & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F. Supp. 547, 607 (D. Del. 2001).
[37] *See* D.I. 342.
[38] *Ga.-Pac. Corp.*, 318 F. Supp. at 1120.

patentee for the licensing of the patents in suit is the 'most influential factor' in determining a reasonable royalty."[39]

Here, the '125 patent in suit is licensed to Magnetar by G&T for a six percent royalty rate of all products sold with a limit of up to $3 million during a given accounting year.[40] As the founder and president of Magnetar, Pribonic negotiated this royalty rate with G&T.[41] Pribonic has personal knowledge from the perspective of a licensee to the '125 patent.[42] Therefore, presuming plaintiffs demonstrate infringement, Pribonic's testimony of why he sought a license, including his understanding that claim 3 of the '125 patent covers Magnetar's brakes,[43] is relevant to the hypothetical negotiation of the royalty rate in calculating damages under *Georgia-Pacific* factor one.

### 2.   Factor Two

The second *Georgia-Pacific* factor is "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit."[44] "This factor examines whether the licenses relied on by the patentee in proving damages are sufficiently comparable to the hypothetical license at issue in suit."[45] "This factor focuses on the licensing customs of the industry and has been interpreted broadly, encompassing even those licenses to which the licensee is not a party."[46]

---

[39] *Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994) (quoting Chisum, 5 *Patents* § 20.03[3] at 20-159).
[40] D.I. 342, Ex. K at 140-41.
[41] *Id.*, Ex. K at 141-42.
[42] *Id.*, Ex. K at 141-42.
[43] *Id.*, Ex. K at 140-44.  In so finding and in light of its previous ruling on Pribonic's testimony, the court is not suggesting he may testify regarding whether the accused products or systems are covered by the '125 patent, or whether Magnetar's braking system is the same as or similar to the accused braking systems.
[44] *Ga.-Pac. Corp.*, 318 F. Supp. at 1120.
[45] *Lucent Techs., Inc.*, 580 F.3d at 1325.
[46] *Proctor & Gamble Co.*, 989 F. Supp. at 607-08.

In the present matter, the '125 patent is the subject of the license agreement between Magnetar and G&T.[47]  Joseph Gemini, plaintiffs' damages expert, relies on the license between Magnetar and G&T as one of the two licenses in his damages report.[48] In analyzing the license between Magnetar and G&T, Gemini relies on Pribonic's testimony that he acquired the license to sell magnetic braking systems to avoid infringement of the '125 patent.[49]  In relation to that license, Pribonic is personally familiar with when "he learned of the '125 patent around 2006, believed his Magnetar brakes, when installed on a ride, infringed the patent, and sought a license to the patent because he did not want to risk litigation or an injunction."[50]

Defendants contend Pribonic's testimony regarding the license between Magnetar and G&T is irrelevant because he fails to connect Magnetar's brakes with any product accused of infringement in this case.[51]  Defendants further argue whether Magnetar's brakes infringe is meaningless, unless there is some corresponding evidence that these brakes are the same as the patents in suit.[52]  Indeed, if such evidence was supplied by plaintiffs, Pribonic cannot provide such testimony because he is not permitted to opine regarding infringement.[53]  However, Pribonic's testimony is advanced for use in a damages analysis as part of a hypothetical negotiation to establish a reasonable royalty rate–not whether the accused products or systems

---

[47] D.I. 342, Ex. K at 137-39.
[48] *Id.*, Ex. H at ¶ 38.
[49] *Id.*, Ex. H at ¶¶ 14, 39.
[50] D.I. 366 at 8-9; D.I. 342, Ex. OO at 2.
[51] D.I. 385 at 4.
[52] *Id.*
[53] *See* D.I. 343-1, Ex. PP at 67-70.

7

.

infringe claim 3 of the '125 patent.[54] Therefore, Pribonic's testimony regarding the royalty rate between Magnetar and G&T is relevant to the hypothetical negotiation of the royalty rate in calculating damages under *Georgia-Pacific* factor two.

### 3. Factor Three

The third *Georgia-Pacific* factor is "[t]he nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold."[55] "Non-exclusive licenses generally command lower royalties."[56]

Here, Magnetar holds a non-exclusive license from G&T of the '125 patent.[57] Similarly in the present matter, this patent would involve a non-exclusive license in the hypothetical negotiation because there are multiple alleged infringers.[58] Therefore, Pribonic's testimony regarding the royalty rate between Magnetar and G&T is relevant to the hypothetical negotiation of the royalty rate in calculating damages under *Georgia-Pacific* factor three.

### 4. Factors Seven & Fifteen

The seventh *Georgia-Pacific* factor is "[t]he duration of the patent and the term of the license."[59] "The theory behind giving weight to the patent's duration is that the parties would have been more likely to have negotiated a higher royalty rate the longer the remaining term of the patent, because a longer term would better allow the licensee

---

[54] *See* D.I. 366 at 9.
[55] *Ga.-Pac. Corp.*, 318 F. Supp. at 1120.
[56] *Lucent Techs., Inc.*, 580 F.3d at 1335.
[57] *See* D.I. 342, Ex. K at 138 (explaining that the license agreement between Magnetar and G&T retained exclusivity for G&T in particular fields).
[58] D.I. 342, Ex. H at ¶ 50, pp. 20-21.
[59] *Ga.-Pac. Corp.*, 318 F. Supp. at 1120.

to establish stronger customer relations."[60]  The fifteenth *Georgia-Pacific* factor is:

> [t]he amount that a licensor (such as the patentee) and a licensee (such
> as the infringer) would have agreed upon (at the time the infringement
> began) if both had been reasonably and voluntarily trying to reach an
> agreement; that is, the amount which a prudent licensee- who desired, as
> a business proposition, to obtain a license to manufacture and sell a
> particular article embodying the patented invention- would have been
> willing to pay as a royalty and yet be able to make a reasonable profit and
> which amount would have been acceptable by a prudent patentee who
> was willing to grant a license.[61]

"The fifteenth factor sets forth the 'willing buyer/willing seller' hypothetical negotiation

through which the other fourteen factors are to be considered."[62]

Here, Pribonic's testimony covers provisions regarding the duration of the patent

and the term of the license, as well as the negotiations between the willing buyer and

the willing seller which address *Georgia-Pacific* factors seven and fifteen.

### B.   Advantages of magnetic brakes over other types of brakes, including friction brakes

The ninth *Georgia-Pacific* factor is "[t]he utility and advantages of *the patent

property* over the old modes or devices, if any, that had been used for working out

similar results."[63]

Defendants contend Pribonic's proffered testimony concerning the advantages of

magnetic brakes over friction brakes[64] is irrelevant, because it relates to the entire field

of magnetic brakes, and not to the brakes at issue.[65]  Plaintiffs argue Pribonic's

---

[60] *Proctor & Gamble Corp.*, 989 F. Supp. at 610.
[61] *Ga.-Pac. Corp.*, 318 F. Supp. at 1120.
[62] *Proctor & Gamble Corp.*, 989 F. Supp. at 613.
[63] *Ga.-Pac. Corp.*, 318 F. Supp. at 1120 (emphasis added).
[64] D.I. 385, Ex. A at 4-5.
[65] *Id.* at 4.

testimony is relevant to show damages under a hypothetical negotiation.[66]

Probonic's testimony relates to the advantages of magnetic brakes over other types of brakes in commercial rides.[67]  In particular, Pribonic opines roller coasters running at higher speeds cannot operate with friction brakes.[68]  Plaintiffs' damages expert relies on this testimony as a basis for forming his opinion in his damages analysis.[69]  Plaintiffs argue the advantages of magnetic brakes weighed against other technology, such as friction brakes, is relevant to what a licensor would be willing to pay for the patented magnetic braking technology.[70]

This *Georgia-Pacific* factor requires a nexus be established between magnetic brakes in general and the patented technology in the instant matter.[71]  Although the patented technology in this case relates to magnetic brakes,[72] plaintiffs fail to proffer any evidence concerning the advantages of the specific patents in suit compared to other technology, as required by factor nine.[73]  Plaintiffs must demonstrate the advantages and utility of patented magnetic brake technology at issue is the same or similar to magnetic brakes and how the patented brake technology provides advantages over older modes or devices.[74]  Therefore, Pribonic's testimony regarding advantages of magnetic brakes in general over other types of brakes, such as friction brakes, is irrelevant under factor nine of the *Georgia-Pacific* factors.

---

[66] D.I. 366 at 9.

[67] *See* D.I. 342, Ex. OO at 4.

[68] D.I. 342, Ex. H at ¶ 32.

[69] D.I. 366 at 9.

[70] *Id.*

[71] *See Ga.-Pac. Corp.*, 318 F. Supp. at 1120.

[72] D.I. 366 at 1.

[73] *See id.* at 9-10.

[74] *Proctor & Gamble Co.*, 989 F. Supp. at 611.

### C.    Importance of roller coasters to amusement park rides

As discussed above, the ninth *Georgia-Pacific* factor is "[t]he utility and

advantages of *the patent property* over the old modes or devices, if any, that had been

used for working out similar results."[75]  The tenth *Georgia-Pacific* factor is "[t]he nature

of the *patented invention*; the character of the commericial embodiment of it as owned

and produced by the licensor; and the benefits to those who have used the invention."[76]

Here, similar to the analysis under the section above,[77] Pribonic's testimony is

irrelevant under *Georgia-Pacific* factor nine because plaintiffs merely proffer the

importance of roller coasters to amusement parks in general, as opposed to the

importance of the roller coasters in suit and their accused braking systems as required

by factor nine.[78]  Absent this established nexus, Pribonic's testimony in this regard is

irrelevant under factor nine.

Similar to the factor nine analysis, Pribonic's testimony is irrelevant under factor

ten.  Factor ten concerns the nature and benefits of the patented invention.[79]  Instead,

plaintiffs' proffer evidence of the importance of roller coasters in general, as opposed to

the value of the accused roller coasters because they are purportedly covered by the

patents in suit.[80]  Therefore, Pribonic's testimony regarding the general importance of

roller coasters to amusement parks is irrelevant under factors nine and ten.

### D.    Importance of magnetic brakes in the construction of roller coasters

---

[75] *Ga.-Pac. Corp.*, 318 F. Supp. at 1120 (emphasis added).
[76] *Id.* (emphasis added).
[77] *See supra* Part IV.B.
[78] *See Ga.-Pac. Corp.*, 318 F. Supp. at 1120.
[79] *Id.*
[80] *Proctor & Gamble*, 989 F. Supp. at 611; *See* D.I. 366 at 10-12.

11

### 1.    Factor Eight

The eighth *Georgia-Pacific* factor is "[t]he established profitability of the *product made under the patent*; its commercial success; and its current popularity."[81]

Here, the connection between roller coaster revenue and magnetic brakes is, at best, tenuous.  Plaintiffs argue roller coasters are key revenue generators in the amusement park business.[82]  In furtherance of this argument, they insinuate the increased revenue to parks from a roller coaster is due to its magnetic braking system.[83]  Plaintiffs fail, however, to advance or demonstrate any nexus between the profitability of a roller coaster ride and any magnetic braking system, including the patented magnetic braking system.[84]  Therefore, Pribonic's testimony regarding the revenue generated from roller coaster rides is irrelevant under factor eight.

### 2.    Factor Thirteen

The thirteenth *Georgia-Pacific* factor is "[t]he portion of the realizable profit that should be *credited to the invention* as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer."[85]  "This factor attempts to take into account the relative contribution of the patented feature to the success of the product.  If the patented feature forms only a small part of the product, either physically or economically, it is generally the case that a licensee would have been less disposed to agree to a high royalty."[86]

---

[81] *Ga.-Pac. Corp.*, 318 F. Supp. at 1120 (emphasis added).
[82] *See* D.I. 366 at 12-13.
[83] *See id.*
[84] *See id.*
[85] *Ga.-Pac. Corp.*, 318 F. Supp. at 1120 (emphasis added).
[86] *Proctor & Gamble Corp.*, 989 F. Supp at 612-13 (citation omitted).

In order for Pribonic's testimony to be relevant under factor thirteen, it must show the realizable profit credited to the patented magnetic braking system.  Pribonic offers no testimony quantifying revenue attributed to magnetic braking systems, let alone the patented braking system–his testimony only relates to the value or importance of roller coaster rides in general.[87]

For Pribonic's testimony to be relevant under factor thirteen, it must distinguish the profit realized from the patented invention from that profit attributable to non-patented elements and other factors.  Pribonic fails to offer any evidence attributing revenue to non-patented elements of roller coasters.[88]  Therefore, his testimony that roller coaster rides are key revenue generators in the amusement park business is irrelevent under factor thirteen.

## V.      STANDARD FOR LAY AND EXPERT TESTIMONY

### A.      FED. R. CIV. P. 26(a)(2)(C) Disclosure Statement

Federal Rule of Civil Procedure ("FED. R. CIV. P.") 26(a)(2)(C) provides requirements for witnesses who do not provide a written report:

> Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
> (i) the subject matter on which the witness is expected to present evidence under [FED. R. EVID] 702, 703, or 705; and
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

### B.      701 Lay Opinion Testimony

The admissibility of lay opinion testimony is governed by FED. R. EVID. 701,

---

[87] See D.I. 366 at 12-13.
[88] See id.

which states in pertinent part:

> If a witness is not testifying as an expert, testimony in the form of an
> opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to
> determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge
> within the scope of Rule 702.

The Third Circuit interprets Rule 701 "to permit individuals not qualified as

experts, but possessing *experience or specialized knowledge* about particular things, to

testify about technical matters that might have been thought to lie within the exclusive

province of experts."[89] "[F]or lay opinion as to technical matters . . . to be admissible, it

must derive from a sufficiently qualified source as to be reliable and hence helpful to the

jury."[90] "In determining whether a lay witness has sufficient special knowledge or

experience to ensure that the lay opinion is rationally derived from the witness's

observation and helpful to the jury, the trial court should focus on the substance of the

witness's background and its germaneness to the issue at hand."[91]

## C.    702 Expert Opinion Testimony

The admissibility of expert testimony is governed by FED. R. EVID. 702, which

states in pertinent part:

> If scientific, technical or other specialized knowledge will assist the trier of
> fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training or
> education, may testify thereto in the form of an opinion or otherwise, if (1)
> the testimony is based upon sufficient facts or data, (2) the testimony is

---

[89] *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1193 (3d Cir. 1995) (emphasis added).

[90] *Id.* at 1201.

[91] *Id.* at 1202.

14

the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[92]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court interpreted FED. R. EVID. 702 to "confide[] to the judges some gatekeeping responsibility in deciding questions of the admissibility of proffered expert testimony."[93] The Third Circuit has analyzed Rule 702 as "embodying three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit."[94] Important facts to consider in evaluating the reliability of a particular scientific or technical methodology include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.[95]

"In *Paoli*, [the Third Circuit] explained that even if the judge believes 'there are better grounds for some alternative conclusion,' and that there are some flaws in the scientist methods, if there are 'good grounds' for the expert's conclusions, it should be admitted."[96] The question of whether an expert's testimony is admissible based on his qualifications, reliability, and fit is committed to the court's discretion.[97]

---

[92] FED. R. EVID. 702.

[93] 509 U.S. 579, 600 (1993) (Rehnquist, J., concurring in part and dissenting in part).

[94] *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (explaining *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-43 (3d Cir. 1994)).

[95] *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1996).

[96] *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152-53 (3d Cir. 1999) (quoting *In re Paoli*, 35 F.3d at 744).

[97] *In re Paoli*, 35 F.3d at 749.

The trial judge has broad latitude in determining whether the *Daubert* factors are reasonable measures of reliability.[98] In *Paoli*, the Third Circuit found that proffers of expert testimony do not have to "demonstrate . . . by a preponderance of evidence that the assessments of their experts are *correct*, they [need] only . . . demonstrate by a preponderance of evidence that their opinions are reliable."[99] *Daubert* recognized "vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[100] *Daubert* emphasized the trial court must "focus" solely on principles and methodology, and not on the conclusions generated.[101] A trial judge, however, is to scrutinize whether such methods have been properly applied to the facts of the case.[102]

As previously stated, the determination of whether to exclude expert evidence is at the court's discretion.[103] The Third Circuit has noted, however:

> While evidentiary rulings are generally subject to a particularly high level of deference because the trial court has a superior vantage point to assess the evidence, evaluating the reliability of scientific methodologies and data does not generally involve assessing the *truthfulness* of the expert witness and thus is often not significantly more difficult on a cold record. Moreover, here there are factors that counsel in favor of a hard look at (more stringent review of) the district court's exercise of discretion. For example, because the reliability standard of 702 and 703 is somewhat amorphous, there is significant risk that district judges will set the threshold too high and will in fact force plaintiffs to prove their case twice. Reducing this risk is particularly important because the Federal

---

[98] See *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 139 (1999).
[99] *In re Paoli*, 35 F.3d at 744.
[100] *Daubert*, 509 U.S. at 596.
[101] *Id.* at 580.
[102] See *id.*
[103] *In re Paoli*, 35 F.3d at 749.

Rules of Evidence display a preference for admissibility.[104]

The Third Circuit has identified several factors for the court to consider in determining whether to exclude expert testimony:

> (1) the prejudice or surprise in fact of the party against whom the excluded witness would have testified, (2) the ability of the party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.[105]

Additionally, the "'importance of the excluded testimony' should be considered."[106]

## VI.   LAY AND EXPERT OPINION ANALYSIS

### A.   701 Lay Opinion

Defendants initially argue Pribonic's testimony should be barred under FED. R. EVID. 702 expert testimony.  However, plaintiffs reply by representing Pribonic's testimony is offered as 701 lay opinion testimony as opposed to 702 expert testimony. Therefore, defendants' *Daubert* analysis is moot.  Since the relationship of Magnetar's brakes to claim 3 of the '125 patent is the only relevant category of Pribonic's testimony, it will be analyzed as to whether Pribonic and his opinion are qualified under FED. R. EVID. 701.

### 1.   701(a)

"Rule 701's requirement that the opinion be 'rationally based on the perception of the witness' demands more than the witness have perceived something firsthand;

---

[104] *Id.* at 749-50 (emphasis in original) (internal citation omitted).
[105] *In re Paoli*, 35 F.3d at 791 (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)).
[106] *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Meyers*, 559 F.2d at 904).

rather, it requires that the witness's perception provide a truly rational basis for his or her opinion."[107] This requirement is "the familiar requirement of first-hand knowledge or observation."[108]

Here, Pribonic has more than mere first-hand knowledge of the relationship of Magnetar's brakes to claim 3 of the '125 patent–he directly participated in negotiations of the license agreement between Magnetar and G&T.[109] In addition, Pribonic signed the license agreement on behalf of Magnetar.[110] Therefore, presuming plaintiffs establish infringement of the patents in suit, Pribonic is qualified under 701(a) to testify in regard to the relationship between Magnetar's brakes and claim 3 of the '125 patent.

2.    701(b)

"[T]he second requirement–that the opinion be 'helpful to a clear understanding of the witness's testimony or the determination of a fact in issue'–demands more than that the opinion have a bearing on the issues in the case; in order to be 'helpful,' an opinion must be reasonably reliable."[111] In other words, "for lay opinion as to technical matters . . . to be admissible, it must derive from a sufficiently qualified source as to be reliable and hence helpful to the jury."[112] In *Joy Manufacturing Co. v. Sola Basic Industries, Inc.*, the lay witness had "extensive personal knowledge of [plaintiff's] plants, its on-going heat treating processes, and the two furnaces in question."[113] The Third Circuit concluded the lay witness had "sufficient personal knowledge of [plaintiff's] heat

---

[107] *Asplundh Mfg. Div.*, 57 F.3d at 1201.
[108] *Id.* at 1196.
[109] D.I. 342, Ex. K at 140-41.
[110] *Id.*, Ex. K at 137-38.
[111] *Asplundh Mfg. Div.*, 57 F.3d at 1201.
[112] *Id.*
[113] 697 F.2d 104, 111 (3d Cir. 1982).

18

treating facility to make an estimate of what amount of downtime was due to the hearth problems."[114]

In the instant matter, Pribonic may testify based on his specialized knowledge as a lay witness as opposed to an expert witness. Similar to the lay witness in *Joy*, Pribonic has sufficient personal knowledge of the '125 patent, Magnetar's brakes, and the license agreement between Magnetar and G&T.[115] In 2006, Pribonic concluded Magnetar's braking system infringed claim 3 of the '125 patent, and sought a license from G&T.[116] Therefore, Pribonic is qualified to testify to relationship between Magnetar's brakes and claim 3 of the '125 patent as a lay witness under FED. R. EVID. 701.

### B. Limited Scope of Pribonic's Testimony

Defendants contend Pribonic does not offer any evidence that Magnetar's brakes are the same or similar to the patents in suit. Indeed, he cannot provide such testimony in light of the court's previously ruling that he may not opine on infringement of the patents in suit.[117]

Pursuant to plaintiffs' representation, Pribonic is not proffered as an expert; therefore, FED. R. EVID. 702 is inapplicable to his testimony. Similarly, FED. R. CIV. P. 26(a)(2)(C) is inapplicable to Pribonic because Rules 702, 703, and 705 do not apply to 701 lay opinion testimony. His testimony is limited to the hypothetical negotiation for a reasonable royalty.

---

[114] *Id.* at 112.
[115] *See* D.I. 342, Ex. K.
[116] D.I. 366 at 9.
[117] *See* D.I. 343-1, Ex. PP at 67-70.

19

## VII.    RECOMMENDED DISPOSITION

Consistent with the findings herein,

IT IS RECOMMENDED that:

(1) Defendants' Motion to Exclude the Testimony of Edward M. Pribonic (D.I. 341) is granted in part and denied in part.

Pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(a) and D. DEL. LR 72.1, any objections to the Report and Recommendation shall be filed within fourteen (14) days limited to ten (10) pages after being served with the same.  Any response is limited to ten (10) pages.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72 dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Date:  February 7, 2014           /s/  Mary Pat Thynge
                                  UNITED STATES MAGISTRATE JUDGE