IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Magnetar Technologies Corp., and | : | |
| G&T Conveyor Co., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civ. No. 07-127-LPS-MPT |
| | : | |
| Six Flags Theme Parks Inc., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM ORDER[1]

WHEREAS, on April 18, 2012, Magistrate Judge Mary Pat Thynge held a teleconference

with counsel to address certain discovery issues involving assertions of attorney-client privilege

and work product immunity relating to documents produced by third-party Acacia Research

Corporation ("Acacia"), the parent of former plaintiff Safety Braking Corporation ("SBC"), in

response to a subpoena in another case (*see* Transcript of April 18, 2012 hearing (D.I. 282 Ex. A

and, hereinafter, "April 18th Tr." and/or "April 18, 2012 Order"); *see also* D.I. 268, 269, 271,

272, 273, 277, 278);[2]

---

[1]The Court writes primarily for the parties, who are thoroughly familiar with the background and disputes in this case.

[2]The materials at issue included various documents produced by Acacia in certain California litigation, including the "Zelley memorandum." In March 2012, Defendants in the instant action had issued a subpoena *ad testificandum* to Geoffrey Zelley, an associate attorney at Connolly Bove Lodge & Hutz LLP ("CBLH"), the law firm that formerly represented Plaintiffs in this matter, including former plaintiff SBC. One purpose of deposing Mr. Zelley was to ask him about a memo he had prepared while representing Plaintiffs, i.e., the "Zelley memorandum." As Judge Thynge summarized in her August 22, 2012 Memorandum Order:

On April 18, 2012, this court addressed issues of attorney-client

WHEREAS, Plaintiffs G&T Conveyor Co. ("G&T") and Magnetar Technologies Corp.

("Magnetar"), as well as CBLH, timely objected to Judge Thynge's April 18, 2012 Order ("First

Objections") (D.I. 274);

WHEREAS, by their First Objections, Plaintiffs contended that Mr. Zelley's deposition

should not go forward due to the risk of a waiver of attorney client privilege and attorney work

product, that the Zelley memorandum and other assertedly privileged documents should be

returned, and that Defendants should not be able to further use such documents (*see id.*; *see also*

D.I. 296, 297, 298);

WHEREAS, Defendants responded to the First Objections, urging the affirmance of

Judge Thynge's decision and requesting that the deposition of Mr. Zelley proceed (*see* D.I. 276;

*see also* D.I. 303);

WHEREAS, Defendants thereafter filed a motion to compel the production of certain

---

> privilege and work product protection with respect to the Zelley
> memorandum and the proposed Zelley deposition. The court ruled
> the factual part of the Zelley memorandum was discoverable, but
> the impressions of counsel contained in the document were not. In
> addition to an attorney-client privilege analysis, the court
> considered the work product protection and looked at when the
> memorandum was produced and to whom. Since Zelley produced
> the memorandum to counsel, although there could be a waiver of
> attorney-client privilege, it did not also mean waiver of the work
> product doctrine occurred. Noting the attorney-client privilege is
> the client's privilege and the work product immunity is only
> invoked by the attorney, the court concluded waiver of the
> attorney-client privilege did not necessarily waive the work product
> immunity. The court also noted there may be a joint representation
> argument on the behalf of Acacia, Magnetar and G&T. Finally, the
> court allowed the deposition to move forward, but limited it to
> what Zelley remembered from his interviews with BAE engineers.

(D.I. 312 at 6-7 (footnotes omitted))

disputed documents and portions of documents subject to Plaintiff's claims of attorney-client privilege and work product protection, and therein requested that Plaintiffs' and CBLH's objections to such production be overruled (the "Motion to Compel") (D.I. 279; *see also* D.I. 280, 291, 303);

WHEREAS, Plaintiffs and CBLH objected to the Motion to Compel (D.I. 281, 283; *see also* D.I. 282, 284, 285, 286, 287, 288, 292, 293, 296, 297, 298), requesting that the Court deny the motion;

WHEREAS, on August 22, 2012, Judge Thynge issued a Memorandum Order granting in part and denying in part the Motion to Compel (*see* D.I. 312 at 37-40);

WHEREAS, Plaintiffs timely objected to the August 22, 2012 Memorandum Order ("Second Objections") (D.I. 315);

WHEREAS, by their Second Objections, Plaintiffs objected to that part of the ruling concerning the destruction of documents, and the resulting sanction imposed therein,[3] i.e., although Judge Thynge found no bad faith by Plaintiffs in connection with the destruction of certain documents, nonetheless she ordered that, as a sanction, some documents containing privileged attorney-client communications should be produced (*see id.* at 1, 4-5);

WHEREAS, Plaintiffs specifically contend Judge Thynge erred: (1) "in finding that Magnetar had control of any of the documents in question;" (2) "in finding that G&T had control over the documents sent by [BAE Automated Systems, Inc. ("BAE")] to BAE's Denver law firm in 1997 or 1998, years prior to G&T's purchase of some of BAE's assets;" (3) "in imposing a

---

[3]Plaintiffs note their objections also overlap with their objections to Judge Thynge's April 18, 2012 Order. (*See* D.I. 315 at 1)

sanction even though there was no finding that anyone intended to suppress evidence;" (4) "in failing to consider that the defendants have not been prejudiced because they say the evidence available to them supports their view that a summary judgment of invalidity of the [U.S. Patent No. 5,277,125] is warranted;" and (5) "in ignoring unrebutted evidence that the document custodians did not destroy evidence believed to be relevant to litigation, and in fact gathered evidence relevant to this litigation" (*id.* at 9-10);

WHEREAS, Plaintiffs further assert that, even if Judge Thynge was correct, "the only relief warranted by the cases cited in the [August 22, 2012] Order would have been the production of litigation hold letters" (*id.* at 10);

WHEREAS, Defendants responded to Plaintiffs' Second Objections, urging the affirmance of the Magistrate Judge's rulings and contending that "there is abundant evidence to support Magistrate Thynge's finding of spoliation," and that the "sanction imposed was neither clearly erroneous nor contrary to law" (D.I. 321 at 2);

WHEREAS, "[p]ursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), non-dispositive pre-trial rulings made by Magistrate Judges on referred matters should only be set aside if clearly erroneous or contrary to law." *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d. 373, 375 (D. Del. 2010). A Magistrate Judge's finding is clearly erroneous if it "(1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Id.* (citing *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92 (3d Cir. 1992)).

WHEREAS, the Court has considered the Magistrate Judge Thynge's rulings and objections and related pleadings and responses thereto;

4

NOW THEREFORE, IT IS HEREBY ORDERED that:

1.      The First Objections (D.I. 274) are OVERRULED.

2.      Magistrate Judge Thynge's April 18, 2012 Order (D.I. 282 Ex. A) is AFFIRMED.

3.      The Second Objections (D.I. 315) are OVERRULED.

4.      Magistrate Judge Thynge's August 22, 2012 Memorandum Order (D.I. 312) is

AFFIRMED.

5.      The Magistrate Judge's April 2012 ruling, which followed a teleconference lasting

more than 90 minutes, and her August 2012 written decision, which runs to 40 pages, are

comprehensive and well-reasoned.  Judge Thynge reached her decisions only after giving all

sides ample opportunity to present their positions, and she thoroughly addressed their competing

contentions.  Hence, most of the points raised by the parties do not require further discussion.

6.      The Court concludes that Judge Thynge's findings were neither clearly erroneous

nor contrary to law.

a.      For example, in relation to the April 2012 decision, the Court agrees with

Defendants that Judge Thynge "properly considered Defendants' substantial need for the

information contained in the Zelley Memo and permitted the deposition to go forward on that

basis," and further that she "properly reasoned that Plaintiffs' spoliation of evidence and other

litigation misconduct have created a substantial need for the information contained in the Zelley

Memo – information that is no longer available to the Defendants by any other means." (D.I. 276

at 7, 12)

b.      In her August decision, Judge Thynge found that the subject documents

"were clearly under the control of G&T at the time of their destruction.  Although the instant

5

matter does not involve the typical intentional withholding of the documents as is routinely involved for an inference, G&T's control of the documents and the potential prejudice to defendants, makes an inference a possible sanction for spoliation." (D.I. 312 at 35) Judge Thynge further found that hundreds of boxes of documents were lost, potentially including "documents [that] could have aided [Defendants] on the issue of invalidity of the '125 patent." (*Id.* at 34) Judge Thynge thoughtfully exercised her discretion in concluding that "[a]lthough the absence of evidence of bad faith spoliation does not warrant dismissal or entering an unfavorable judgment, the lack of reasonable preservation measures and prejudice weighs in favor of a lesser sanction." (*Id.*) She ultimately held that "[d]ue to the extensive number of documents destroyed, the potential prejudice their destruction may have caused . . . and the occurrence of the destruction after the start of litigation, the spoliation here is a serious matter worthy of sanction." (*Id.*; *see also* D.I. 321 at 10 (Defendants arguing, "[b]efore imposing an appropriate sanction, [Judge Thynge] properly considered G&T's fault, the prejudice to the defendants, and the availability of other, lesser sanctions"))

7.     The Court concludes that Judge Thynge properly considered and balanced the need to discover potentially relevant evidence in light of the concerns and conduct of all relevant parties. The challenged decisions are not clearly erroneous nor based on an error of law, nor is there any basis for concluding that Judge Thynge abused her discretion in any manner.

February 7, 2014
Wilmington, Delaware

_____
UNITED STATES DISTRICT JUDGE