IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGNETAR TECHNOLOGIES CORP., ET AL., : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | Civil Action No. 07-127-LPS |
| : | |
| SIX FLAGS THEME PARKS, INC., ET AL., : | |
| : | |
| Defendants. : | |

## MEMORANDUM ORDER

At Wilmington this **29th** day of **July, 2014**:

IT IS HEREBY ORDERED that:

1. The Reports and Recommendations issued by Chief Magistrate Judge Mary Pat Thynge (D.I. 404, 405, 407) ("Reports") are ADOPTED and Plaintiffs' objections to those Reports (D.I. 409, 410, 411) are OVERRULED.

2. Defendants' Motion to Exclude Plaintiffs' Infringement Expert, Mark T. Hanlon, (D.I. 343) is GRANTED.

3. Defendants' Motion to Exclude Plaintiffs' Lay Witness, Edward Pribonic, (D.I. 341) is GRANTED IN PART and DENIED IN PART.

4. Defendants' Motion for Summary Judgment of Invalidity of the '125 Patent (D.I. 337) is GRANTED.

5. Plaintiffs' Motion for Summary Judgment of Infringement of Claim 3 of the '125 Patent (D.I. 327) is GRANTED IN PART and DENIED IN PART.

6. Defendants' Motion for Summary Judgment of Non-Infringement of Claim 3 of

1

'125 Patent (D.I. 339) is GRANTED IN PART and DENIED IN PART.

7. Defendants' Motion of Invalidity and Non-Infringement of '237 Patent (D.I. 333) is DENIED as to invalidity and GRANTED as to non-infringement.

8. Plaintiffs' Motion for Summary Judgment of Infringement of '237 Patent (D.I. 329) is DENIED.

9. Judgment is entered FOR Defendants and AGAINST Plaintiffs. The Clerk of Court is directed to CLOSE this case.

## LEGAL STANDARDS

A Magistrate Judge has authority to make a report and recommendation as to resolution of a case-dispositive motion, such as a motion for summary judgment. *See* 28 U.S.C. § 636(b)(1)(B); *Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 444 (3d Cir. 2005). When reviewing the decision of a Magistrate Judge on a dispositive matter, the Court conducts a *de novo* review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Because a motion for summary judgment is considered a dispositive matter, the conclusions of the Magistrate Judge in connection with such a motion are reviewed *de novo*. *See N.L.R.B. v. Frazier*, 966 F.2d 812, 817 (3d Cir. 1992). The Court may accept, reject, or modify the recommendations of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1); *Hill v. Beyer*, 62 F.3d 474, 481 (3d Cir. 1995). The Court may also receive further evidence or return the matter to the Magistrate Judge with instructions for further proceedings. *See* 28 U.S.C. § 636(b)(1).

In reviewing a recommendation regarding summary judgment, the Court applies the same standards as the Magistrate Judge. Accordingly, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal citation omitted). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving

3

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

A *Daubert* motion to exclude testimony presents a non-dispositive matter, and objections to a Magistrate Judge's recommendation on a non-dispositive motion are subject to a "clearly erroneous and contrary to law" standard of review, pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). Under a "clearly erroneous" standard, the appellate court will only set aside factual findings when it is "left with the definite and firm conviction that a mistake has been committed." *Green v. Fornario*, 486 F.3d 100, 104 (3d Cir. 2007) (citing *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)). Accordingly, it is "the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). A Magistrate Judge's order is contrary to law "when the magistrate judge has misinterpreted or misapplied the applicable law." *Doe v. Hartford Life & Accident Ins. Co.*, 237

F.R.D. 545, 548 (D.N.J. 2006); *see also Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 424 (D.N.J. 2009) ("While a magistrate judge's decision typically is entitled to deference, a magistrate judge's legal conclusions on a non-dispositive motion will be reviewed de novo.") (internal citation omitted).

The Third Circuit has explained that it "afford[s] a district court's application and interpretation of Rule 702 plenary review," but "review[s] the [trial] court's decision to admit or reject testimony under an abuse of discretion standard." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000). "The district court abuses its discretion if its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or the improper application of law to fact." *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 322 (3d Cir. 2012). An abuse of discretion can also occur when "no reasonable person would adopt the district court's view." *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 192 (3d Cir. 2000) (citing *Oddi*, 234 F.3d at 146).

## DISCUSSION

The Court heard oral argument on Plaintiffs' objections on April 18, 2014. Given the parties' familiarity with this long-running case, the thorough and well-reasoned Reports of the Magistrate Judge (which together run to 118 pages), and the further input the Court received at the hearing, the Court here provides only limited comments with respect to the reasoning for its disposition of the various motions.

### Motion to Exclude Hanlon

Plaintiffs assert that the Report applied incorrect legal standards in concluding that Hanlon's opinions were not reliable. (D.I. 409 at 1) Federal Rule of Civil Procedure 26(A)(2)(B)(i) requires that an expert report must contain a "complete statement of all opinions

5

the witness will express and the basis and reasons for them." Hanlon's report fails to meet this standard, as it simply lists general references to multiple documents which purportedly show how each element of claim 3 of the '125 patent is satisfied. This leaves "too great an analytical gap between the data and the opinion being proferred." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

**Motion to Exclude Pribonic**

Magistrate Judge Thynge recommended limiting the testimony of Plaintiffs' witness, Edward Pribonic, to just the relationship of Magnetar's brakes to claim 3 of the '125 patent. Judge Thynge further recommended excluding as irrelevant Pribonic's testimony relating to (1) the advantages of magnetic brakes over other types of brakes, (2) the importance of roller coasters to amusement parts, and (3) the importance of magnetic brakes in the construction of roller coasters. (D.I. 405) Plaintiffs object that a relevancy analysis is not a "pretrial matter" and that Pribonic's testimony should be allowed without restriction. (D.I. 410) Plaintiffs further argue that "to the extent the Report does address a 'pretrial matter' under Section 636(b), the Report requires de novo review." (*Id.* at 2)

The Court disagrees with Plaintiffs' argument that Judge Thynge lacked authority to deal with this issue. The Court referred all motions to Judge Thynge on September 28, 2012 (D.I. 323), a referral to which Plaintiffs did not object until *after* Judge Thynge issued her recommendations against them. Given Judge Thynge's familiarity with this case, it was entirely proper and efficient for the Court to refer all motions to her, including those requiring a determination of the relevancy of testimony. *See generally In re Japanese Elec. Prods.*, 723 F.2d 238, 260 (3d Cir. 1983) ("[W]e hold that the trial court has discretion to make even relevancy

6

rulings pre-trial, subject to review for abuse of discretion."). Lastly, as the motion to exclude presents a non-dispositive matter, it will be reviewed for clear error.

Plaintiffs assert that Pribonic's "disputed testimony is directly related to the nature of the patented inventions" and "will provide insight into the value of the patented invention in the context of the hypothetical negotiation." (D.I. 410 at 1) However, the general categories on which Pribonic seeks to testify fail to establish a nexus between the patents-in-suit and magnetic brakes, roller coasters, or amusement parks generally. This testimony is irrelevant and will be excluded, consistent with Judge Thynge's Reports.

**Summary Judgment of Invalidity of '125 Patent**

Next, Plaintiffs object to Judge Thynge's recommendation that Defendants' motion for summary judgment of invalidity of claim 3 of the '125 patent be granted. Defendants assert four bases for invalidity: (1) the patent contains a clear error that renders it fatally indefinite; (2) the patent fails to name an inventor; (3) the subject matter of claim 3 was reduced to practice, offered for sale, and actually sold prior to the critical date, giving rise to an on-sale bar under 35 U.S.C. § 102(b); and (4) the claim is invalid as an obvious and predictable combination of known elements.

Reviewing the motion for summary judgment *de novo*, the Court agrees with Judge Thynge that Defendants are correct on all four grounds. A clear error in the patent claim renders it indefinite. The Court can correct such an error only if (i) the correction is not subject to reasonable debate based on consideration of the claim language and the specification, and (ii) the prosecution history does not suggest a different interpretation of the claims. *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003). The Court agrees with

Defendants that any of "said wheels," "said rails," or "said track" are plausible substitutions for the erroneous recital of "said tracks." However, it is also clear that this multiplicity of plausible substitutions leaves the scope of the claim subject to reasonable debate. As such, the Court cannot correct the error and claim 3 of the '125 patent is invalid.

"If nonjoinder of an actual inventor is proved by clear and convincing evidence, a patent is rendered invalid." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998) (internal citations omitted). As Judge Thynge concluded, Mr. Kwangho Chung was an unnamed inventor, a conclusion which she properly derived from Mr. Chung's testimony that it was his idea to use the double-sided motor that is the subject of claim 3 of the '125 patent. (D.I. 407 at 11) This testimony about Mr. Chung's role in the invention is corroborated by the testimony of Mr. Joel Staehs, the only living named inventor of the '125 patent, who confirmed that this was, indeed, Mr. Chung's idea. (D.I. 407 at 12)

"[A]n accused infringer challenging the validity of a patent under the on-sale bar must demonstrate by clear and convincing evidence that there was a definite sale or offer to sell more than one year before the application for the subject patent, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention or rendered it obvious." *Elan Corp., PLC v. Andrx Pharm., Inc.,* 366 F.3d 1336, 1340 (Fed Cir. 2004) (internal citations omitted). Plaintiffs have failed to show a genuine dispute of material fact to counter Defendants' evidence that a BAE system embodying the patented invention was offered for sale and sold prior to the critical date of October 28, 1991. While Plaintiffs assert that only design services were sold or offered for sale (D.I. 407 at 24), the Court's review of the evidence reveals that a reasonable finder of fact could only find that the Engineering Services Proposal was for a system that

included the subject matter of claim 3.  Prior to the critical date, United had purchased (and partially paid for) the engineering, manufacturing, and installation of the prototype invention.  Therefore, the patent is invalid under 35 U.S.C. § 102(b).

Judge Thynge also concluded that a person of ordinary skill in the art would have found the combination of Miller's pinch brake and Demukai's double-sided magnetic brakes obvious.  Plaintiffs' expert provided no opinion on whether the combination of existing elements was obvious.  The Court agrees with Judge Thynge that claim 3 of the '125 patent is invalid as obvious in light of the prior art.

**Summary Judgment of Infringement of Claim 3 of the '125 Patent**
**Summary Judgment of Non-Infringement of Claim 3 of '125 Patent**

Both sides move for summary judgment with respect to infringement of the '125 patent and request that the Court address infringement even if (as has happened) the Court adopts Judge Thynge's conclusion that Defendants should be granted summary judgment of invalidity of claim 3 of the '125 patent.  Plaintiffs assert that Defendants' interrogatory responses and expert report failed to put forth any facts to rebut Plaintiffs' infringement contentions, while Defendants counter that Plaintiffs never articulated specific infringement allegations, leaving Defendants no meaningful opportunity to respond.

Defendants' motion for summary judgement categorizes all accused rides as follows: (1) rides with opposed magnet assemblies mounted to the car, and fins mounted to the track structure; (2) rides with fins mounted to the car but magnet assemblies mounted above or below the rails rather than directly "between" the rails; and (3) rides with brake systems that do not include a fin and/or magnet assemblies at all.  (D.I. 407 at 46)  The Court concludes that, with

respect to the first category of rides, Plaintiffs have failed to provide the particularized testimony required to support their claim of infringement under the doctrine of equivalents.[1] Additionally, the doctrine of equivalents cannot be used to vitiate a claim term, which would be the result if Plaintiffs' contentions were accepted. Regarding the second category of rides, the claim term "between" requires construction, and the Court agrees with Judge Thynge that there remains a genuine dispute of material fact as to infringement by these rides. As for the third category of rides, the Court agrees with Judge Thynge that there is no genuine dispute of material fact that certain accused rides (Vertical Velocity, V2) do not infringe (as they have linear synchronous motors mounted beneath the cars that propel the vehicles along the track and act as brakes) but there is such a dispute with respect to whether an additional accused ride, Poltergeist, infringes (e.g., whether it uses friction brakes).

Accordingly, as Judge Thynge recommended, both parties' motions for summary judgment relating to infringement of claim 3 of the '125 patent are granted in part and denied in part.

**Summary Judgment of Invalidity and Non-Infringement of '237 Patent**
**Summary Judgment of Infringement of '237 Patent**

Defendants did not object to Judge Thynge's recommendation that their motion for summary judgment of invalidity of the '237 patent be denied. For the reasons stated by Judge Thynge, Defendants are not entitled to summary judgment of invalidity due to lack of adequate written description or obviousness.

---

[1] In determining whether to grant summary judgment of non-infringement, the Court will not consider the testimony of Hanlon it has stricken.

Both parties move for summary judgment with respect to infringement of the '237 patent. The Court agrees with Judge Thynge that Defendants should be granted summary judgment of non-infringement, while Plaintiffs' motion for summary judgment of infringement should be denied.

As Defendants show, in none of the accused rides is the braking force adjusted as a function of the velocity of the fin when it is between the arrays; rather, it is adjusted either to an off or on position (rather than being a "self-regulating" apparatus) based on a control system measurement taken upstream of the brake. (D.I. 407 at 71-72) As Defendants argue, "because the accused rides employ a sensor measuring the speed of the car upstream from the brake to determine whether the brake should be on or off, those rides cannot meet the requirement that the braking force is adjusted 'in a way that depends on velocity of the 'member' *between the first and second 'arrays' of magnets*.'" (*Id.* at 72) (emphasis in original)

Plaintiffs contend that the location of measurement is irrelevant, since the measurement upstream will necessarily take into account the velocity of the member between the magnets. "If the measurement occurs upstream, the velocity between the arrays will either: 1) decrease, 2) increase, or 3) not change from the velocity at the upstream point. In any case, braking force will still be adjusted as a function [of] the velocity of the member between the array (i.e. the velocity at upstream measurement point plus or minus any change in velocity from measurement point to array)." (D.I. 365 at 4) "The operation of the accused brakes is functionally related to the velocity at the brake." (D.I. 411 at 22) But Plaintiffs' evidence – including Defendants' brake manuals (D.I. 365, Exs. 4, 7), deposition testimony (D.I. 365, Ex. E), and a contract for a wooden roller coaster which specifies the use of magnetic brakes (D.I. 330, Ex. K) – fails to

provide a basis on which a factfinder could reasonably find that the accused brakes operate as required by asserted claims 1 and 10. The brake manuals explain that the eddy current is adjusted by pneumatic valves to induce braking force, but does not address any relationship between this braking force and the velocity of the member, either between the arrays or outside them. Similarly, the manuals state there is a change in the spacing of the arrays, but do not show this is a result of any movement of the member therepast, as required by claims 1 and 10. Chickola's deposition testimony sheds little light on the question of how the brakes are turned on or off, simply stating that they can be adjusted. And the contract for a wooden roller coaster – specifying that "[m]agnetic-type brakes will also be incorporated into the design to allow for smooth stops. Magnetic brakes will be used in the primary slowdown zone and in the station/maintenance area as speed regulators" (D.I. 330, Ex. K at 85) – gives no indication that the magnetic brakes being referred to are of a type that comes within the scope of claims 1 and 10 of the '237 patent.

_____
UNITED STATES DISTRICT JUDGE