## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MAGNETAR TECHNOLOGIES CORP. and )
G&T CONVEYOR CO., )
           Plaintiffs, )
  )
v. )
  )
SIX FLAGS THEME PARKS INC., )
TIERCO MARYLAND, INC., GREAT )
AMERICA LLC, KKI, LLC, MAGIC MOUNTAIN )
LLC, PARK MANAGEMENT CORP., )     C.A. No. 07-127-LPS-MPT
RIVERSIDE PARK ENTERPRISES, INC., )
SIX FLAGS OVER GEORGIA II, L.P., SIX )
FLAGS ST. LOUIS, LLC, TEXAS FLAGS, )
LTD, ASTROWORLD, L.P., DARIEN LAKE )
THEME PARK AND CAMPING RESORT, )
INC., ELITCH GARDENS, L.P., BUSCH )
ENTERTAINMENT CORP., CEDAR FAIR LP, )
PARAMOUNT PARKS INC., KNOTT'S )
BERRY FARM, KINGS ISLAND COMPANY, )
and CEDAR FAIR, )
           Defendants. )

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Defendants, Six Flags Theme Parks Inc., et al. (collectively, "defendants"), seek

an award of reasonable attorneys' fees under 35 U.S.C. § 285 against plaintiffs,

Magnetar Technologies Corp. ("Magnetar") and G&T Conveyor Co. ("G&T," collectively

"plaintiffs"), and under 28 U.S.C. § 1927 against plaintiffs' counsel, Niro, Haller, & Niro

(the "Niro Firm").[1]  Defendants submit they incurred $1,768,920.88 in fees and costs in

the underlying patent infringement suit, resulting in invalidation of plaintiffs' U.S. Patent

No. 5,277,125 (the "'125 patent") and a finding of non-infringement of plaintiffs' U.S.

---

[1] D.I. 426.

Patent No. 6,659,237 (the "'237 patent").[2]

Defendants' motion for attorneys' fees is timely under FED. R. CIV. P.

54(d)(2)(B)(I). This Report and Recommendation is issued pursuant to 28 U.S.C.

§ 636(b)(1)(B), FED. R. CIV. P. 72(a)(1), and D. DEL. L.R. 72.1.[3]  For the reasons set

forth below, it is recommended that defendants' motion for attorneys' fees under 35

U.S.C. § 285 be granted in part with leave to modify their fee request and their motion

for attorneys' fees under 28 U.S.C. § 1927 be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The record details the extensive factual and procedural background in this case.

For the purposes of this motion, only a brief recitation of pertinent facts is necessary.

Plaintiffs are assignees and/or exclusive licensees of the '125 and '237 patents.[4]

Plaintiffs acquired the '125 patent from BAE Automated Systems, Inc. ("BAE").  The

'125 patent claims a car and track assembly with wheels rolling on a two-rail track and a

metal fin extending down from the car and passing between linear motors.[5]  Joel L.

Staehs ("Staehs") and Gene DiFonso ("DiFonso") are the named inventors.  The '237

patent claims an eddy current brake.  Edward M. Pribonic ("Pribonic") is the sole named

---

[2] *Magnetar Techs. Corp. v. Six Flags Theme Parks, Inc.*, C.A. No. 07-127-LPS, 2014 WL 3748999, at *1 (D. Del. July 29, 2014).

[3] *See also Tech. Innovations, LLC v. Amazon.com, Inc.*, C.A. No. 11-690-SLR, 2014 WL 3703582, at *1 (D. Del. July 23, 2014) ("[A]n award of attorney fees pursuant to § 285 is not appropriate until a final judgment has been entered.").

[4] *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No.07-127-LPS-MPT, 2014 WL 530241, at *1 n.1 (D. Del. Feb. 7, 2014) ("Magnetar is the assignee of the '237 patent and holds an exclusive field-limited license for the '125 patent."); *id.* at 1 n.2 ("G&T is the assignee of the '125 patent.").

[5] *Magnetar Techs. Corp. v. Six Flags Theme Parks, Inc.*, C.A. No. 07-127-LPS-MPT, 2014 WL 547712, at *1 (D. Del. Feb. 7, 2014).

2

inventor.[6] Defendants are amusement park operators.[7]

In 2006, plaintiffs licensed the '125 and '237 patents to Acacia Research Group LLC ("Acacia").[8] Acacia and its subsidiaries acquire and then assert patents through litigation.[9] Plaintiffs assigned control over the enforcement, litigation, settlement and licensing of the '125 and '237 patents to Acacia. Subsequently, Acacia formed Safety Braking Corporation ("SBC") as a special purpose entity to hold and enforce the patents in suit.[10]

On March 1, 2007, SBC and plaintiffs instituted the present matter, alleging braking systems and assemblies in defendants' amusement park rides infringe claim 3 of the '125 patent and/or claims 1 and 10 of the '237 patent.[11] SBC retained Connolly Bove Lodge & Hutz ("Connolly Bove") to represent both SBC and plaintiffs.

In September 2007, Jeffrey Zelley ("Zelley"), an associate at Connolly Bove, reviewed BAE's archival records in G&T's possession to identify privileged documents not subject to production.[12] Thereafter, Zelley submitted a memorandum (the "Memorandum") to Connolly Bove and Acacia. The Memorandum flagged several dates, including (1) October 28, 1991, the critical date of the'125 patent; (2) August 7, 1991, the date when BAE prepared a "detailed engineering proposal" for United Airways, explaining the construction of a telecar system for the Denver International

---

[6] Id. at *11.
[7] Id. at *1.
[8] D.I. 1 at 6-7.
[9] D.I. 428, Ex. 17 at 4.
[10] See D.I. 1 at 6-7.
[11] Id. at 1-8.
[12] D.I. 428, Ex. 1.

3

Airport (the "Denver Prototype"); and (3) November 12, 1991, when DiFonso advised

Bechtel Corporation that commercial negotiations to install the Denver Prototype had

begun.[13] The Memorandum also noted a prototype covered by the '125 patent

constructed for American Airlines may have been publicly available before the critical

date.

The Memorandum was intended for internal circulation. Zelley and Connolly

Bove did not disclose its contents in their responses to defendants' interrogatories.

They also failed to share the Memorandum with the Niro Firm when it assumed

representation of plaintiffs. On February 29, 2012, however, defendants obtained a

copy of the Memorandum in response to production in related litigation in another

jurisdiction.[14]

Before BAE went out of business in 2001, it established a record retention

schedule for disposal of its archival records.[15] That schedule continued after the filing

of this matter. Subsequently, this court found plaintiffs liable for negligent spoliation of

archival records relating to the prosecution of the '125 patent and sanctioned them by

finding factual parts of the Memorandum and certain other documents discoverable.[16]

Subsequently, the Honorable Leonard P. Stark adopted those findings.[17]

In February 2008, Acacia and SBC withdrew from this matter and advised

---

[13] *Id.*

[14] D.I. 427 at 3.

[15] D.I. 428, Ex. 5.

[16] *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 491-92 (D. Del. 2012), *aff'd sub nom. Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No. 07-127-LPS-MPT, 2014 WL 545440 (D. Del. Feb. 7, 2014).

[17] *Magnetar*, 2014 WL 545440, at *3.

4

plaintiffs that the potential public use of the Denver Prototype threatened their patent portfolio and chances to prevail in this action.[18] Connolly Bove withdrew as plaintiffs' counsel in July 2008.[19] Plaintiffs continued this action with the representation of the Niro Firm.[20]

In March 2011, this court denied[21] defendants' motion for leave to file a supplemental *Markman* brief to add a new term, "between," of the '125 patent to be construed.[22] In February and March 2012, defendants forwarded two letters to the Niro Firm, enumerating the weaknesses of plaintiffs' claims and threatening to raise inequitable conduct and move for attorneys' fees under § 285 unless dismissal with prejudice followed.[23] The Niro Firm disputed defendants' position and explained an alternative interpretation of the record existed.[24]

In February 2014, this court struck the testimony of Mark T. Hanlon ("Hanlon"), plaintiffs' expert witness,[25] but allowed the testimony of Pribonic, a lay witness.[26] This court also recommended that defendants' motion for summary judgment of invalidity of the '125 patent be granted; plaintiffs' motion for summary judgment of infringement of claim 3 be denied; defendants' motion for summary judgment of non-infringement of the

---

[18] *See* D.I. 427 at 5.

[19] *See id.* at 4.

[20] D.I. 84.

[21] D.I. 213 at 1.

[22] D.I. 211 at 1. Plaintiffs opposed the motion as contrary to the scheduling order and unduly prejudicial. D.I. 212 at 1-2.

[23] D.I. 428, Ex. 18 at 1-5.

[24] *Id.*, Ex. 5.

[25] *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No. 07-127-LPS-MPT, 2014 WL 529983, at *12 (D. Del. Feb. 7, 2014).

[26] *Magnetar*, 2014 WL 530241, at *1.

5

'125 patent be granted as to certain accused amusement park rides; defendants'

motion for summary judgment of invalidity and non-infringement of the '237 patent be

denied as to invalidity and granted as to non-infringement; and plaintiffs' motion for

summary judgment of infringement of the '237 patent be denied.[27]

Judge Stark adopted the recommendations in October 2014 and invalidated the

'125 patent due to indefiniteness, incorrect inventorship, on-sale bar, and obviousness,

determined most of the accused amusement park rides did not infringe the '125 patent

and found the '237 patent valid and not infringed.[28]

Following the entry of the final judgment, defendants moved for attorneys' fees

under 35 U.S.C. § 285 and 28 U.S.C. § 1927. On August 27, 2014, plaintiffs appealed

the final judgment to the United States Court of Appeals for the Federal Circuit,[29] and

on April 17, 2015, it affirmed the findings of this court.[30]

## III. LEGAL STANDARDS

### A. 35 U.S.C. §285

Under the principle known as the American Rule, each litigant is responsible for

its attorneys' fees and costs. This principle applies equally to prevailing and losing

parties unless a specific statute authorizes the shifting of attorneys' fees.[31]

In patent litigation, 35 U.S.C. § 285 authorizes an award of reasonable attorneys'

---

[27] *Magnetar*, 2014 WL 547712, at *11.

[28] *Magnetar*, 2014 WL 3748999, at *1.

[29] D.I. 432 at 1.

[30] *Magnetar Tech. v. Six Flags Theme Parks, Inc.*, 599 F. App'x 960 (Fed. Cir. 2015).

[31] *Octane Fitness, LLC v. ICON Health & Fitness, Inc* ., 134 S. Ct. 1749, 1753 (2014) (quoting *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013)) (under the American Rule, each litigant pays "his own attorney[s'] fees, win or lose").

fees to prevailing parties "in exceptional cases."[32] "When deciding whether to award attorney[s'] fees under § 285, [the] court engages in a two-step inquiry."[33] In step one, the court "determines whether the case is exceptional."[34] If the case is exceptional, step two requires an evaluation of "whether an award of attorneys' fees to the prevailing party is justified."[35]

The United States Supreme Court recently clarified "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."[36] "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."[37] Courts may use such non-exclusive factors as frivolousness, motivation, and objective unreasonableness in analyzing the factual or legal components, and the need in particular circumstances to advance considerations of compensation and deterrence.[38]

In step two, courts in the Third Circuit use the "lodestar" approach to calculate attorneys' fees, i.e., they "multiply[] the amount of time reasonably expended by

---

[32] 35 U.S.C. § 285 .

[33] *Gevo, Inc. v. Butamax Advanced Biofuels LLC*, C.A. No. 13–576–SLR, 2014 WL 4247735, at *1 (D. Del. Aug. 26, 2014) (quoting *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012)) (internal quotation marks omitted).
[34] *Id.*
[35] *Id.*
[36] *Octane,* 134 S. Ct. at 1756.
[37] *Id.*
[38] *Id.* n.6.

7

reasonable hourly rates."[39]  A court may reduce hourly rates and/or exclude "unnecessary hours" from the lodestar calculation.[40]

A party must obtain at least some relief on the merits to qualify as "prevailing."[41] This qualification, however, does not entitle prevailing parties to automatically recover attorneys' fees.[42]  A court's inquiry into shifting attorneys' fees is not warranted unless relief on the merits has altered the legal relationship of the parties.[43]

The party seeking attorneys' fees must prove its contentions by a preponderance of evidence,[44] but it is not required to show subjective bad faith.[45]  It also bears the burden of establishing the reasonableness of its fees.[46]

## B.    28 U.S.C. § 1927

A party may move under 28 U.S.C. § 1927 for assessment of "the excess costs, expenses, and attorneys' fees" directly against the opposing counsel.[47]  Fees may be assessed against counsel as a sanction for "(1) multipl[ying] proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the

---

[39] *Tech. Innovations, LLC v. Amazon.com, Inc.*, C.A. No. 11-690-SLR, 2014 WL 3703582, at *2 (D. Del. July 23, 2014).

[40] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Homeland Housewares, LLC v. Hastie2Market, LLC*, 2013-1537, 2014 WL 4400184, at *2 (Fed. Cir. Sept. 8, 2014) (affirming both the award of attorneys' fees in connection with the non-infringement defense and the denial to award fees for the defendant's subsequent pursuit of invalidity claims); *Tech. Innovations*, 2014 WL 3703582, at *2 (declining to award fees for hours "expended as part of a reasonable defense effort").

[41] *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004).
[42] *Id.*

[43] *Id.; Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001).

[44] *Octane*, 134 S. Ct. at 1758.

[45] *Id.* at 1757.

[46] *See Hensley*, 461 U.S. at 433.

[47] 28 U.S.C. § 1927.

8

proceedings; and (4) doing so in bad faith or by intentional misconduct."[48] The moving

party must specifically demonstrate particular examples of counsel's bad faith or

intentional misconduct that increased its costs and expenses.[49]

The Third Circuit has warned that "counsel's conduct result[ing] from . . .

misunderstanding, bad judgment, or well-intentioned zeal" does not warrant imposition

of sanctions under § 1927.[50] It also instructed courts to "resist the understandable

temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did

not prevail, [the] action must have been unreasonable or without foundation."[51]

Deterrence is the main goal of sanctions under § 1927; thus they are reserved

for counsel's own acts of bad faith or intentional misconduct.[52] A mere change in

representation does not warrant imputing prior counsel's culpability to the new counsel

or *vice versa*.[53]

---

[48] *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175,
188 (3d Cir. 2002); *see also Microsoft Corp. v. WebXchange Inc.*, 715 F. Supp. 2d 598,
602 (D. Del. 2010) (same).

[49] *Prudential*, 278 F.3d at 188; *see also Hilburn v. Bayonne Parking Auth.*, 562 F.
App'x 82, 86-87 (3d Cir. 2014) (same).

[50] *LaSalle Nat'l Bank v. First Conn. Holding Grp., LLC.*, 287 F.3d 279, 289 (3d
Cir. 2002).

[51] *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 796 (3d Cir.
1999) (internal quotation marks omitted). *See also Medtronic Navigation, Inc. v.
BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 965 (Fed. Cir. 2010)
(reversing the award of attorneys' fees under § 1927 because it "was not unreasonable
for [the plaintiff's counsel] to continue to press its client's case" after an unfavorable
claim construction in light of the remaining available arguments.

[52] *Hilburn*, 562 F. App'x at 86-87; *id.* at 86 n.6.

[53] *See, e.g., Dreyer v. Altchem Envtl. Servs., Inc.*, C.A. No. 06-2393 (RBK), 2007
WL 7186177, at *5 (D.N.J. Sept. 25, 2007) (denying to charge fees against the
plaintiff's former counsel because, even assuming "there was ever a need to deter [its]
misconduct . . . , it no longer exists"). *See also Equity Lifestyle Props., Inc. v. Fla.
Mowing & Landscape Serv., Inc.*, C.A. No. 05-165-FtM-29SPC, C.A. No. 05-187-FtM-
29SPC, 2009 WL 256397, at *1 (M.D. Fla. Feb. 3, 2009) (analyzing separately alleged

9

## IV. ANALYSIS

### A.    35 U.S.C. §285

Defendants maintain the instant matter is exceptional because plaintiffs advanced frivolous claims, withheld discovery about the events giving rise to on-sale bar, maintained an unreasonable litigation position, engaged in large-scale spoliation and refused to dismiss this action following the receipt of defendants' letters in 2012. Plaintiffs deny all allegations of sanctionable misconduct, but concede defendants are the prevailing party.[54]

#### 1.    Step One

At step one of the § 285 inquiry, a district court evaluates the losing party's litigation posture and conduct under a totality of circumstances analysis by applying the *Octane* factors of frivolousness, motivation, objective unreasonableness, and the considerations of compensation and deterrence.[55]  Since plaintiffs' conduct was objectively unreasonable, the instant matter is exceptional under *Octane*.

#### (a) Frivolousness

Defendants' frivolousness argument focuses on the decision of invalidity of the '125 patent. They assert plaintiffs either brought this action in knowing disregard of the invalidating evidence, while engaging in large-scale spoliation, or failed to perform a

---

misconduct of the old and the new counsel and holding the new counsel's conduct did not warrant imposition of § 1927 sanctions); *Baptist v. City of Kankakee*, 03-CV-2115, 2005 WL 3417114, at *1-3 (C.D. Ill. Dec. 13, 2005) (since "[p]laintiffs' new counsel has unreasonably and vexatiously multiplied the proceedings in this case," he may have exposed himself to sanctions under § 1927).

[54] *See* D.I. 439 at 2.
[55] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 n.6 (2014).

10

reasonable inquiry into the validity of the patent.[56] They do not challenge the merits of plaintiffs' claims under the '237 patent.

Cases from the Third Circuit and sister jurisdictions recognize frivolousness generally involves unwarranted or groundless claims.[57] Unsubstantiated assertions that the plaintiff's claims were "without merit are . . . unavailing."[58] Rather, courts may award attorneys' fees where the plaintiff knew or "willfully ignored evidence of his claims' meritlessness" before filing the complaint; "where such meritlessness could have been discovered by [a] basic pre-trial investigation[;] or . . . where such meritlessness is made clear to the court early in the litigation."[59]

Here, despite the subsequent invalidation of the '125 patent, plaintiffs' claims were not frivolous. Plaintiffs had reason to rely on the *prima facie* evidence of the '125 patent's validity arising from the patent grant by the U.S. Patent and Trademark Office ("PTO"). A basic pre-trial investigation would not have confirmed that claim 3 was indefinite or the subject matter of the '125 patent obvious. Those findings of invalidity by the court occurred after seven years of the litigation, following extensive discovery,

---

[56] D.I. 427 at 16.

[57] *See, e.g.*, *Lumen View Tech., LLC v. Findthebest.com, Inc.*, C.A. No. 13-3599 (DLC), 2014 WL 5389215, at *4 (S.D.N.Y. Oct. 23, 2014).

[58] *Small v. Implant Direct Mfg. LLC*, C.A. No. 06-683 (NRB), 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014).

[59] *Id.*; *see also Lumen*, 2014 WL 2440867, at *6 (awarding fees because basic investigation would have revealed defendant's non-infringement); *Kilopass Tech. Inc. v. Sidense Corp.*, C.A. No. 10-02066-SI, 2014 WL 3956703, at *13 (N.D. Cal. Aug. 12, 2014) (awarding fees where plaintiff's investigation consisted of getting one legal opinion of non-infringement and another incomplete opinion); *H-W Tech., Inc. v. Overstock.com, Inc.*, C.A. No.12-0636-G (BH), 2014 WL 4378750, at *6 (N.D. Tex. Sept. 3, 2014) (noting the Federal Circuit did not consider plaintiff's arguments frivolous because it held oral argument and issued a precedential written opinion).

11

depositions, claim construction, and expert testimony. That defendants were successful in their arguments does not constitute frivolousness.

Defendants direct the court to the Memorandum detailing Zelley's investigation of BAE's archives in 2007. The Memorandum was drafted shortly after this action commenced, making Zelley's observations part of the pre-trial investigation. The Memorandum raised questions, but offered no definitive answers about possible on-sale and public use bars. Zelley did not determine when the Denver Prototype was built, whether it contained all limitations of the '125 patent, who analyzed it, and what safety precautions BAE initiated to protect confidentiality of the prototype.[60] The Memorandum stated with certainty only that the Denver Prototype was subject to commercial negotiations with United Airlines fifteen days after the critical date, which was not fatal to this patent.[61]

Although Zelley suggested a further investigation may be necessary and set aside over a hundred boxes of BAE's records and several floppy disks and VHS tapes, the sheer volume of these materials records indicates more than the basic or standard review/investigation would eventually occur.

The primary evidence resulting in the finding of on-sale bar was a video tape dated before the '125 patent's critical date. The tape showed a car descending on a portion of a track equipped with magnetic brakes. Defendants learned of this tape in BAE's archives during the deposition of G&T's employee, Dan Pockrus ("Pockrus"), in September 2011.

---

[60] *Id.*, Ex. 1.
[61] *Id.*

12

The record is devoid of any evidence that plaintiffs knew of this tape before

Pockrus's deposition. Contrary to defendants' argument, the requisite knowledge

cannot be inferred from G&T's failure to halt the routine disposal of BAE's archives.

BAE deposited its archives with a disposal facility and designated disposal dates before

it went out of business.[62] G&T's e-mails to the disposal facility show it never attempted

to accelerate the destruction of records potentially relevant to this action.[63] When

defendants deposed Pockrus, who supervised the disposal of BAE's archives, he

denied G&T intentionally "went through the archive and . . . thinned it out."[64]

In addition, defendants' own efforts undermine their assertions that a basic pre-

trial investigation would have alerted plaintiffs to the existence of this tape. Despite the

information provided during the Pockrus deposition in September 2011, defendants did

not request this tape from plaintiffs until February 2012.

Lastly, defendants allege plaintiffs' complaint was groundless because this court

invalidated the '125 patent for incorrect inventorship. The '125 patent only named two

persons–Staehs and DiFonso–as inventors. Kwangho Chung ("Chung"), who

suggested BAE should use a double-sided motor on the Denver Prototype, was not

identified as an inventor. Plaintiffs conducted a basic investigation of inventorship,

because they sought and obtained a quitclaim deed from Chung assigning any of his

rights in the '125 patent in July 2007.

Importantly, Staehs's and Chung's depositions, which clarified the significance of

---

[62] D.I. 428, Ex. 9 at 11.
[63] *Id.*, Ex. 19.
[64] *Id.*, Ex. 9 at 10-11.

13

Chung's contribution, did not occur until 2011, five years after litigation began.

Following these depositions, plaintiffs failed to move for joinder of Chung pursuant to 35

U.S.C. § 256. This failure, however, does not make the instant matter frivolous since

the inventorship issues were discovered late in the litigation and may be curable.

Accordingly, the frivolousness factor does not weigh in defendants' favor.

## (b) Improper motivation

Improper motives concern, *inter alia*, extortive and harassing practices aimed to

obtain settlements rather than vindicate patents.[65] Vindication of patent rights is not an

improper motive, even though actions may lead to licensing agreements between

litigants. Courts are more likely to question the motives of non-practicing entities.[66] The

inference of impropriety is stronger if the non-practicing entity initiates several patent

infringement suits within a short period of time.[67]

In the instant matter, defendants fail to show that plaintiffs' motives were

improper. The record is devoid of evidence that plaintiffs harassed, embarrassed, or

demanded a nuisance settlement from defendants. Rather, defendants concede they

_____

[65] *Summit Data Sys., LLC v. EMC Corp.*, C.A. No. 10-749-GMS, 2014 WL 4955689, at *5 (D. Del. Sept. 25, 2014) (plaintiff is improperly motivated if it files the complaint to "extract quick settlements"); *Lumen*, 2014 WL 5389215, at *4 (improper motivation includes a "desire to extract a nuisance settlement").

[66] *See LendingTree, LLC v. Zillow, Inc.*, C.A. No.10-00439-FDW-DCK, 2014 WL 5147551, at *13 (W.D.N.C. Oct. 9, 2014) (distinguishing disputes "involving non-practicing entities whose sole business model is to acquire patents and litigate rights associated with the patents, usually in an attempt to obtain a settlement or license with the allegedly infringing company").

[67] *Lumen*, 2014 WL 2440867, at *7 (awarding fees where plaintiff instituted several lawsuits in "a short time frame"); *see also Gevo, Inc. v. Butamax Advanced Biofuels LLC*, C.A. No. 13–576–SLR, 2014 WL 4247735, at *2 & n.2 (D. Del. Aug. 26, 2014) (denying attorneys' fees where both parties were practicing entities involved in multiple patent infringement matters).

14

threatened fees under § 285 unless plaintiffs settled or dismissed this action.[68]

Defendants contend Pribonic's e-mail to Acacia shows plaintiffs were at least partially

motivated by the prospect of extracting licensing fees from defendants.[69] Pribonic's e-

mail, however, is not dispositive because it urges Acacia to negotiate licenses as a less

costly and stressful alternative to litigation,[70] and emphasizes plaintiffs' subjective belief

in the strength of their patents.[71] Thus, the evidence does not support defendants'

position on this factor.

### (c)  Objective unreasonableness

Defendants submit plaintiffs' litigation conduct was unreasonable, as evident

from their weak legal position on on-sale bar; their refusal to dismiss after Acacia and

SBC's withdrew in 2008; their refusal to dismiss the matter after receiving defendants'

letters in February and March of 2012; their failure to address indefiniteness; their

position on inventorship; and their submission of inadequate expert testimony.[72]

The losing party's litigation position is objectively unreasonable if it proffers

arguments so inadequate that success likely will not occur under any circumstance.[73]

A party's handling of litigation may be unreasonable if the party "shift[s] its theories of

---

[68] D.I. 428, Ex. 18 at 5. *See also Wiley v. RockTenn CP, LLC*, C.A. No. 12-00226-KGB, 2014 WL 4929447, at *8 (E.D. Ark. Sept. 30, 2014) (holding the matter not exceptional where defendants threatened plaintiffs with attorneys' fees in absence of a dismissal).

[69] D.I. 428, Ex. 2 at 1-2 (complaining Acacia "made the strategic decision . . . to litigating the largest infringers before making any attempt to first negotiate licenses" and "refused to begin solicitation of licensing of parks not in suit").

[70] *Id.*

[71] *Id.* at 1 (Pribonic stating he "has a niche market and some pretty good patents").

[72] D.I. 427.

[73] *See Gevo*, 2014 WL 4247735, at *2; *Small*, 2014 WL 5463621, at *3.

15

infringement late in the litigation and without following the proper procedures for amendment of contentions"[74] or submits unsolicited court filings.[75] An unsuccessful argument on summary judgment does not necessarily demonstrate objective baselessness.[76] *Octane* obviated the need to show bad faith, and good faith arguments are not unreasonable.[77]

In the instant matter, defendants attack plaintiffs' position regarding on-sale bar as unreasonable. In response, plaintiffs maintain that BAE offered only design services for the Denver Prototype and did not sell the finished product prior to the critical date.[78] This court disagreed and found BAE sold a finished product covered by claim 3 of the '125 patent, which Judge Stark and the Federal Circuit affirmed.[79] Plaintiffs, however, advanced reasonable arguments in support of their legal position, such as lack of a fixed price and on-going negotiations concerning engineering man-hours. Thus, their

---

[74] *Kilopass*, 2014 WL 3956703, at *14.

[75] *Homeland*, 2014 WL 4400184, at *1, 3 (affirming a case may be exceptional if a plaintiff files unsolicited briefs and meritless motions for reconsideration).

[76] *See MarcTec*, 664 F.3d at 918; *see also H-W Tech.*, 2014 WL 4378750, at *7 (denying attorneys' fees where the losing party did not prevail on weak legal arguments); *Wiley*, 2014 WL 4929447, at *7 (dismissal of a motion for summary judgment does not mean the losing party's claim was objectively unreasonable).

[77] *See, e.g., EON Corp. IP Holdings LLC v. Cisco Sys. Inc.*, C.A. No. 12-1011-JST, 2014 WL 3726170, at *5 (N.D. Cal. July 25, 2014) (even where plaintiff's argument was "quite stretched" and its conduct "difficult to explain," the court could not "quite conclude that no reasonable patentee could see an opening . . . through which the argument could be squeezed") (emphasis omitted); *Gametek LLC v. Zynga, Inc.*, C.A. No. 13-2546 RS, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (finding plaintiff's briefing, which "consisted of granular parsing of the claimed steps rather than any substantive explanation of how [the invention] differed from the underlying abstract idea," was inadequate but "did not . . . descend to the level of frivolous argument or objective unreasonableness").

[78] *Magnetar*, 2014 WL 3748999, at *4.

[79] *Id.*

16

theories on on-sale bar were not objectively baseless.

Defendants maintain that pursuing claims of the '125 patent were improper after Acacia and SBC withdrew and advised Pribonic of their concern that on-sale bar would negatively affect their portfolio and the litigation.[80] First, the communication between Acacia, SBC, and Pribonic addressed the public display of BAE's prototype. Although a public display before the critical date may result in a finding of invalidity based on the public-use bar,[81] defendants did not raise this issue in their motion for summary judgment.[82] Second, Pribonic requested that Acacia interview witnesses knowledgeable of any public displays of prototypes before the filing of the '125 patent application.[83]

Defendants further claim plaintiffs are liable under § 285 because they continued with this matter after defendants' letters in February and March 2012. These letters discuss the newly-discovered video tape from BAE's archives and other evidence, predicting invalidation of the '125 patent under the public use and on-sale bars and sanctions for document destruction, inequitable conduct, and fraud on the PTO.[84] Defendants' predictions occurred before the court considered the new evidence, and subsequent developments demonstrated certain of their arguments were incorrect. For instance, defendants did not raise the public use bar in their motion of invalidity of the '125 patent. Therefore, plaintiffs' conclusion that dismissal of this action as premature

---

[80] D.I. 427 at 5.
[81] 35 U.S.C. § 102(b); *Cont'l Plastic Containers v. Owens Brockway Plastic Prods., Inc.*, 141 F.3d 1073, 1079 (Fed. Cir. 1998).
[82] D.I. 354 at 1.
[83] D.I. 428, Ex. 2 at 3.
[84] *Id.*, Ex. 18 at 1-5.

17

was reasonable.

Defendants also contend plaintiffs unreasonably refused to address indefiniteness during the *Markman* proceedings.[85] This argument is misplaced. During claim construction, defendants filed an emergency motion to add the new term "between" to the list of disputed terms, which plaintiffs opposed.[86] The motion was denied.[87] The subsequent finding of indefiniteness related to the term "tracks" not "between," and was first raised by defendants during case dispositive motions, long after the *Markman* proceedings.[88] In light of the denial of defendants' emergency motion, plaintiffs' opposition was not unreasonable. Plaintiffs also raised a plausible argument that the term "tracks" in the '125 patent was a correctable error[89] as evidenced from the intrinsic evidence and the prior art cited and relied on by defendants' expert.[90]

Defendants further maintain plaintiffs' arguments regarding incorrect inventorship were objectively unreasonable because of the finding that Chung was the third, unnamed inventor of the double-sided motor claimed in the '125 patent. The issue, however, is not whether the court invalidated the '125 patent based on incorrect inventorship, but whether it was so obvious that Chung was an inventor that plaintiffs'

---

[85] D.I. 427 at 12.

[86] D.I. 212 at 1.

[87] D.I. 213.

[88] *Magnetar*, 2014 WL 547712, at *2-3.

[89] *Id.* at *4.

[90] *Id.*; *see also* D.I. 376, Ex. 14, ¶ 46 (report of defendants' expert witness) ("[T]he prior art system used linear motor stators and permanent magnets lying flat between a pair of tracks and operating on a plate (the rotor or shuttle) that was mounted horizontally on the bottom of a car that rolled on the tracks.").

18

arguments were objectively unreasonable.

Plaintiffs deny their conduct was objectively unreasonable because double-sided motors were in the prior art since the 1960s, and Chung did not regard himself as an inventor and transferred his rights in the patent to plaintiffs in 2007. They further note that "no one asked the USPTO to add Chung for . . . twenty years."[91]

A patent applicant is responsible for the veracity of documents submitted to the PTO.[92] If an error in inventorship is raised following the patent grant, the patent holder may move for joinder of omitted inventors under to 35 U.S.C. § 256.[93] "When a party asserts invalidity . . . due to nonjoinder, a district court should first determine whether there exists clear and convincing proof that the alleged unnamed inventor was in fact a co-inventor. Upon such a finding of incorrect inventorship, a patentee may invoke section 256 to save the patent from invalidity."[94] Nonjoinder may be corrected "on notice and hearing of all parties concerned" and upon a showing that the error occurred

_____

[91] D.I. 439 at 6.

[92] *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997) ("The inventors as named in an issued patent are presumed to be correct." ) (internal quotation marks omitted).

[93] Section 256 provides:

(a) Correction.–Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

(b) Patent valid if error corrected.–The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256.

[94] *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998).

without any deceptive intent on the part of the unnamed inventor.[95]

Plaintiffs clearly suspected Chung was an inventor of the '125 patent. In 2007, they obtained a transfer of his rights, title and interest in the patent. Subsequently, in July 2011, Chung and Staehs testified regarding Chung's significant contribution to the Denver Prototype. Even discounting Chung's testimony as self-interested, Staehs's corroborating testimony confirmed Chung was an inventor.[96]

Plaintiffs' reliance on the absence of any prior challenge to inventorship is misplaced. As noted above, the testimony of Chung and Staehs confirms Chung as an inventor. Moreover, Staehs was hired by plaintiffs in 2007 as a consultant, and was aware of Chung's involvement.[97]

Plaintiffs' arguments confuse patent ownership[98] with inventorship. Patent ownership originally vests in the inventor and may be transferred by contract or a quitclaim deed.[99] The primary issue in this matter was whether Chung's contribution qualified him as an inventor. A secondary issue concerned his rights in the '125 patent if he were. The quitclaim deed addressed only the second concern, and could not

_____

[95] Id.

[96] D.I. 428, Ex. 7 at 39; See also Magnetar Techs. Corp. v. Six Flags Theme Parks, Inc., C.A. No. 07-127-LPS-MPT, 2014 WL 547712, at *6 (D. Del. Feb. 7, 2014) (Staehs admitting it was Chung's "great idea" to use the double-sided motor arrangement to cure the problem of overheating).

[97] D.I. 428, Ex. 22.

[98] 35 U.S.C. § 261 (recognizing that patents "have the attributes of personal property").

[99] Section § 261 authorizes that "patents or any interest therein shall be assignable by law by an instrument in writing" allowing the patentee or his representatives to "grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States." 35 U.S.C. § 261; see Memorylink Corp. v. Motorola Solutions, Inc., 773 F.3d 1266, 1271-72 (Fed. Cir. 2014) (finding a quitclaim deed is an instrument of patent conveyance).

20

retroactively strip him of his inventorship.

Until the present motion, plaintiffs never submitted the quitclaim deed as evidence bearing on inventorship. Although it was previously included as an exhibit to a declaration in support their reply brief on a motion to compel, plaintiffs' argument therein focused on defendants' opportunity to depose all involved in the Denver project, and not inventorship.[100] Briefing on defendants' motion for summary judgment of invalidity based on incorrect inventorship occurred in 2013. Nowhere in plaintiffs' opposition did they assert the quitclaim deed as evidence of lack of inventorship.[101]

Therefore, as evidenced from the facts, a finding of objective unreasonableness against plaintiffs on inventorship is warranted.

Finally, defendants submit plaintiffs knew or should have known their expert's opinion fell well short of the *Daubert* standard. The report of Hanlon, plaintiffs' expert witness on infringement, was conclusory, lacked the necessary comparison between each claim element of the '125 patent and the accused rides, and did not address obviousness. Although this court determined Hanlon was qualified under the liberal interpretation of an expert under FED. R. EVID. 702 because of his previous and current experiences, its conclusions regarding his methodology were the opposite.[102] This court

---

[100] *See* D.I. 283, 284. A court is not obligated wade through appendices filed with prior briefing to hunt for documents that may be relevant to an argument in subsequent briefing on a later motion. *Skretvedt v. E.I. DuPont de Nemours & Co.*, C.A. No. 98-61-MPT, 2006 WL 3623705 (D. Del. Dec. 11, 2006), *aff'd in part, rev'd in part*, 260 F. App'x 531, 536 (3d Cir. 2008).

[101] D.I. 376 at 9-10. Plaintiffs never responded to defendants' argument concerning § 256, thereby "conceding the futility of correcting inventorship via that section." *Magnetar,* 2014 WL 547712, at *9.

[102] *See Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No.07-127-LPS-MPT, 2014 WL 529983 (D. Del. Feb. 7, 2014), *adopted Magnetar Techs. Corp. v.*

21

determined that his entire expert report was not based on any reliable methodology,[103] and strongly criticized his entire infringement analysis, both literal and under the doctrine of equivalents for both patents, as conclusory, without analysis of how each claim element read on or was met by the accused ride.[104] The court noted a laundry list of unanswered questions, concluding "since Hanlon fails to identify structures in the accused ride that correspond to the claim elements, neither the court nor a trier of fact could discern the structures purported to meet the claim limitations for literal infringement."[105] It reached the same conclusion regarding the doctrine of equivalents.[106] It specifically commented:

> even if the court assumes the documents and deposition referenced by Hanlon contain the necessary analysis, it is not the court's role (nor the opposition's responsibility) to comb through these documents, extrapolate the necessary information, analyze it, and hobble together an expert opinion based on assumptions of what the expert felt was significant.[107]

Such criticism demonstrates that Hanlon's report so lacked any reliable methodology under the *Daubert*[108] analysis and FED. R. EVID. 702 that it should have been apparent to plaintiffs. Therefore, plaintiffs' reliance on Hanlon's expert report was objectively unreasonable.

Defendants also claim plaintiffs unreasonably failed to address obviousness.

When an obviousness defense is raised, the burden rests on the party asserting the

---

*Six Flags Theme Parks Inc.*, C.A. No.07-127-LPS-MPT, 2014 WL 3748999, at *2.
[103] *Id.*
[104] *Id.* at *6-12.
[105] *Id.* at *10 n.78.
[106] *Id.*
[107] *Magnetar*, 2014 WL 529983, at *12.
[108] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 508 U.S. 579 (1933).

22

defense to show by clear and convincing evidence that the patent is invalid.[109] Should the court find this burden is met, the party enforcing the patent may proffer expert testimony supporting a contrary finding.[110] In this matter, plaintiffs attacked the opinions and testimony of defendants' expert witness, James L. Kirtley ("Kirtley"), by noting insufficiencies, rather than through an expert report. In their opposition to defendants' motion for summary judgment of invalidity of the'125 patent, they argued Kirtley ignored the prosecution history and relied on dramatically different prior art references, including an assembly with mechanical friction brakes.[111] Since undermining Kirtley's expert opinion may have resulted in a denial of defendants' motion, plaintiffs' approach was not unreasonable.

Therefore, on the issues of incorrect inventorship and Hanlon's expert report as to methodology, the court finds that defendants have shown objective unreasonableness.

### (d) Considerations of compensation and deterrence

The need to compensate and deter arises when the accused party's misconduct unfairly prejudices the opposition and improperly increases litigation expense.[112] Shifting attorneys' fees as a sanction or a penalty for merely being unsuccessful is not warranted. Courts will decline to assess attorneys' fees against the losing party where

---

[109] *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009).
[110] *Id.*
[111] D.I. 376 at 15-19.
[112] *Lumen*, 2014 WL 5389215, at *4 (noting the importance of deterring "predatory strateg[ies]" and "threats to make the litigation expensive").

23

the record demonstrates both sides engaged in aggressive litigation conduct.[113] A plaintiff who is a hyper-litigious non-practicing entity is not prevented from asserting non-frivolous claims.[114]

Applicable to this factor is defendants' argument for sanctions based on negligent spoliation, Hanlon's expert opinion, and Acacia' purported hyper-litigiousness. Spoliation was previously addressed, and resulted in production of certain parts of the Memorandum as the cure. The court reached this conclusion after weighing the harm to defendants and considering other alternatives, including assessment of attorneys' fees against plaintiffs. Awarding attorneys' fees to defendants at this stage for spoliation is inconsistent with the court's prior findings, and thus, inappropriate.

Similarly, the mere fact that Acacia and SBC are non-practicing entities does not warrant an award of attorneys' fees. Nothing presented by defendants adequately demonstrates that, while Acacia and SBC remained as plaintiffs, they engaged in unreasonable or improper conduct.

In addition, both withdrew from this litigation in 2008. The remaining plaintiffs are practicing entities that manufacture and sell braking systems, and brought this action because defendants were using park rides purportedly covered by the patents in suit.[115]

---

[113] *See CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-CV-6635-LHK, 2014 WL 2508386, at *13 (N.D. Cal. June 3, 2014) (denying § 285 motion).

[114] *Rates Tech. Inc. v. Broadvox Holding Co., LLC*, 13 Civ. 0152 (SAS), 2014 WL 5023354, at *10 (S.D.N.Y. Oct. 7, 2014).

[115] *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No. 07-127-LPS-MPT, 2014 WL 533425, at *1 (D. Del. Feb. 7, 2014). *report and recommendation adopted*, C.A. No. 07-127-LPS-MPT, 2014 WL 1338949 (D. Del. Mar. 31, 2014).

The flaws in the methodology in Hanlon's expert opinion, however, raise concern. As previously discussed, his opinion lacked basic information, specifically a comparison between the elements of the claims and the accused products to understand how both literal and equivalent infringement was determined. He failed to identify structures in the accused rides that corresponded to the claim elements, which prevented the court or a trier of fact to comprehend how or why the accused products infringed. As a result, when Hanlon's report issued, plaintiffs should have known his analysis of claim 3 of the '125 patent was inadequate.

In view of the totality of the circumstances, this case is exceptional based on plaintiffs' objectively unreasonable position on inventorship and Hanlon's expert report on the '125 patent. Regarding incorrect inventorship, plaintiffs, at the latest, knew or should have known of the inventorship problem as a result of the Chung and Staehs' depositions in July 2011, and should have been aware of the significant deficiencies in Hanlon's report when it issued.

## 2. Step Two

In step two, district courts analyze whether the amount of attorneys' fees is justified. District courts have "considerable discretion in determining the amount of reasonable attorney[s'] fees under § 285 . . . [because of their] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters."[116] The Federal Circuit requires that district courts be "reasonably careful" in calculating the amount of attorneys' fees, independently review

---

[116] *Homeland*, 581 F. App'x at 881.

the prevailing party's billing entries, and decline an award of fees and costs that were unnecessary to prevail in a litigation.[117]

Defendants request of $1,768,920.88 in costs and fees is presently excessive, in part because it includes expenses incurred to defend against infringement of the '237 patent. Defendants are not entitled to recover such expenditures because they never raised §285 arguments regarding plaintiffs' conduct in relation to this patent.

During litigation, defendants incurred attorneys' fees and costs in their attempt to invalidate the '237 patent. They asserted a counterclaim of invalidity,[118] submitted expert reports and testimony, and separately moved for summary judgment of invalidity of the '237 patent. Defendants are not entitled to expenses incurred for those services because their motion was denied.

This matter is exceptional based on plaintiffs' objectively unreasonable conduct in relation to incorrect inventorship of the '125 patent, and the lack of methodology in Hanlon's expert report. Defendants, therefore, are only entitled to reasonable attorneys' and costs regarding the '125 patent related to incorrect inventorship since July 29, 2011 (when Staehs and Chung's depositions occurred) and Hanlon's expert report when issued. In light of these findings, defendants timely request for leave to modify their fee request should be granted.

The court, however, notes that support for defendants' original fee request is inadequate. Their supporting documents consistent of a two-page listing of fees and costs, two-pages of a report by the American Intellectual Property Law Association

---

[117] *Id.*
[118] D.I. 27 at 9, 13-14.

26

("AIPLA Report"), and a declaration of defendants' counsel ("Moore's Declaration"). The listing provides only totals of monthly billings for fees and costs from February 2011 through July 2014, and is devoid of any description regarding the work performed, the identity of the attorneys involved, their background and experience in patent litigation, whether they were associates or partners and their hourly rates. The AIPLA Report lists minimum and maximum attorney billing rates in 2013 for intellectual property services, with no information on the range of fees charged in 2011, 2012, or 2014. It is also unclear whether the Report focuses exclusively on patent litigation. Moore's Declaration contains a generic statement that defendants were billed at a rate of $300 to $810 per hour and that his personal hourly rate was $730, without any breakdown of the rates applied per attorney for their profession services. In light of the AIPLA Report which depends on the type of services performed and size of the firm and its location, the court cannot determine the reasonableness of the range of hourly rates quoted in Moore's Declaration, specifically the $810 amount. Such concerns should be addressed by defendants in any subsequent filing modifying their attorneys' fees and costs' request.

## B.     28 U.S.C. § 1927

Defendants seek either the full amount of their attorneys' fees or the fees incurred after February 2012 be assessed against the Niro Firm because it (1) assumed representation of plaintiffs with the knowledge of the invalidity of the '125 patent; (2) failed to update false and incomplete interrogatory responses; (3) failed to prevent destruction of BAE's archives; (4) refused to address indefiniteness of Claim 3 of the '125 patent during the *Markman* proceedings; (5) asserted unreasonable

27

arguments concerning indefiniteness, inventorship, and obviousness of the '125 patent; and (6) maintained this action after February 2012 despite defendants' letters attacking plaintiffs' legal position and demonstrating a likely defense victory.[119] The Niro Firm denies all allegations of bad faith and intentional misconduct.

The record in this matter contains no direct evidence that the Niro Firm assumed plaintiffs' representation with the knowledge of invalidity of the '125 patent. Defendants' reliance on Zelley's Memorandum is misplaced. Zelley, an associate at Connolly Bove, prepared the Memorandum for circulation within his firm and for Acacia in September 2007. Defendants fail to demonstrate that the Memorandum was shared with the Niro Firm when Connelly Bove withdrew. On the contrary, defendants concede they do not know "[w]hether and when" the Niro Firm obtained the Memorandum.[120]

In the absence of direct evidence of misconduct, defendants maintain the withdrawal of SBC and Connolly Bove put the Niro Firm on notice of potential legal weaknesses.[121] The mere withdrawal of counsel does not indicate a case is weak. In fact, defendants changed counsel during this litigation.[122]

Defendants also contend the Niro Firm should be sanctioned for failure to update plaintiffs' interrogatory responses. Pursuant to FED. R. CIV. PRO. 26(e), a party must supplement its responses "in a timely manner if [it] learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective

---

[119] D.I. 427 at 18-19.

[120] See D.I. 446 at 4.

[121] Id. at 3.

[122] D.I. 75 (notice of Wilmer Cutler Pickering Hale and Dorr LLP's withdrawal); D.I. 82 (notice of Potter, Anderson & Corroon's withdrawal); see also D.I. 128 (Morris, Nichols, Arsht &Tunnell LLP's withdrawal in 2009).

information has not otherwise been made known to the other parties during the discovery process or in writing . . . ."[123]

Following the production of the Memorandum by a third party in another action, this court ordered production of the factual parts of the Memorandum[124] and found "allegations of [plaintiffs'] incomplete interrogatory answers and uncooperativeness with discovery requests fall[] short of demonstrating a *prima facie* case of crime or fraud."[125] Other portions were held to be privileged.[126] Since part of the Memorandum was produced, and defendants fail to show that the Niro Firm knew or was aware of the Memorandum before defendants, failure to update plaintiffs' interrogatory responses does not justify the severe sanction of attorneys' fees.

Defendants further argue the Niro Firm should be sanctioned for spoliation of BAE's archival records. Because § 1927 requires intentional misconduct or bad faith, sanctioning the Niro Firm would be contrary to this court's prior rulings,[127] which found the continued destruction of BAE's archives was negligent, not intentional conduct and not bad faith.[128] The routine disposal of BAE's archival records began before the Niro Firm's involvement in this matter.[129] There is no evidence that the Niro Firm concealed, wilfully ignored, or encouraged the destruction of BAE's archives after it began representing plaintiffs. As a result, negligent spoliation does not warrant sanctions

---

[123] FED. R. CIV. P. 26(e).
[124] *Magnetar*, 886 F. Supp. 2d at 491-92.
[125] *Id.* at 487 (italics added).
[126] *Id.* at 491-92.
[127] *Prudential*, 278 F.3d at 188.
[128] *Magnetar*, 886 F. Supp. 2d at 490.
[129] D.I. 428, Ex. 9 at 10-11 (indicating BAE designated the disposal dates for its archival records on or before 2001).

under § 1927.

Defendants further urge sanctions are justified because Niro Firm refused to address indefiniteness in connection with the *Markman* issues. As explained previously, defendants attempt to add the claim term "between" for construction was denied. Their later motion for summary judgment of invalidity for indefiniteness was on the term "tracks" and not "between." Thus, this argument also does not support imposition of sanctions.

Defendants argue the Niro Firm's position on indefiniteness, obviousness, and incorrect inventorship of the '125 patent is indicative of bad faith and intentional misconduct. As previously addressed, under the analysis of *Octane* factors, the position of the Niro Firm on indefiniteness and obviousness was not unreasonable. There is no evidence of the Niro Firm's bad faith or intentional misconduct on these issues.

Lastly, defendants erroneously contend the Niro Firm is liable under § 1927 because it maintained this action despite defense counsel's letters in February and March 2012. When defendants demanded dismissal, no case dispositive motion had been filed. The Niro Firm's prompt response contradicts defendants' argument. Plaintiffs' counsel explained in detail why they disagreed with defendants' position on the '125 patent, expressed a willingness to continue a good faith dialogue, and requested that defendants "provide any additional information . . . [plaintiffs] should consider."[130] Accordingly, maintaining this action on the '125 patent should not subject

---

[130] D.I. 428, Ex. 4 at 2.

the Niro Firm to liability under § 1927.

Since defendants fail to establish the Niro Firm prolonged and multiplied court proceedings in bad faith or by intentional misconduct, defendants' motion for attorneys' fees against the Niro Firm under § 1927 should be denied.

## V.    RECOMMENDED DISPOSITION

Consistent with the findings herein,

IT IS RECOMMENDED that

(1) defendants' motion for attorneys' fees under § 285 be denied in part and granted in part with leave to amend or modify its request for attorneys' and costs consistent with this opinion.  Filing of any amended/modified request and supporting documents shall be due on or before August 28, 2015, unless objections are filed; and

(2) defendants' motion for attorneys' fees under § 1927 be denied.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), FED. R. CIV. P. 72(a) and D. DEL. LR 72.1, any objections to the Report and Recommendation shall be filed within fourteen (14) days limited to ten (10) pages after being served with the same.  Any response is limited to ten (10) pages.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72 dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.


Dated: July 21, 2015                    /s/ Mary Pat Thynge
                                        UNITED STATES MAGISTRATE JUDGE